UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION

IN RE:

BUTTERMILK TOWNE CENTER LLC                          CASE NO. 10-21162

DEBTOR

## MEMORANDUM OPINION AND ORDER

This matter came before the court on the Limited Objection of Bank of America N.A. ("Bank") to Debtor's Motion for Use of Cash Collateral [DOC 64]. An evidentiary hearing was held on May 25, 2010 and a "Final Order on Use of Cash Collateral" [Doc 94] was entered on June 1, 2010. The court took under submission the sole issue of whether Buttermilk Towne Center ("Debtor") has provided adequate protection to the Bank for its proposed use of cash collateral to pay professional fees.  For the reasons set forth below, the court finds that the Debtor has provided the requisite adequate protection.

### Background

Debtor is the owner and operator of a commercial real estate development. As lessee under a ground lease, the Debtor subleases space in the development to tenants who pay rent to the Debtor in exchange for use of the leased premises. The rents generated from these subleases constitute the entirety of the Debtor's revenues. This court has previously ruled that the rents are property of the estate and constitute cash collateral.

### Facts

As part of its 16 week budget, Debtor seeks to place $260,000.00

1

in escrow for payment of professional fees. Those fees are $15,000.00 per week for Debtor's bankruptcy counsel, and $5,000.00 per month for Feather's LLC. Debtor's professionals will still file fee applications that are subject to review and objection separately.

At the hearing, the court heard testimony from Donald Feathers regarding whether there was adequate protection to the Bank. His testimony was provided by the Debtor to show that future rents will far exceed the amount needed to pay the Bank's debt in full. The Bank is currently owed approximately $36.5 million. The Debtor argues that using cash collateral from rents to pay professional fees protects the Bank's interests in the rents as the professionals are necessary to ongoing operations. By agreement between the parties, Mr. Feather's testimony did not include evidence regarding the effect of the value of the real estate on the adequate protection issue.

Donald Feathers testified that:

1. He is an independent contractor for a property management company which manages the Debtor's operations.

2. He assisted in overseeing Debtor's leasing operations.

3. He is the custodian of the Debtor's books and records.

4. He prepared the exhibits offered at the hearing.

5. Exhibit A is a post-petition leases analysis of Debtor based on letters of intent, but those proposed tenants are not committed. The exhibit shows that Debtor expects additional cash flow of more than $7.8 million based on the letters of intent.

6. Exhibit B is a cash flow analysis based on current leases, renewals per leases, space to be leased and new leases. Debtor projects total cash flow of approximately $150 million through the

year 2045. It is admitted that this is a best case scenario.

7. Exhibit C is a cash flow analysis based on current leases, renewals per leases, space to be leased and new leases that does not include rents from LA Fitness for the years 2010-2015 because LA Fitness is currently offsetting 100% of its rent for money that debtor owes it. Debtor projects total cash flow of approximately $147 million through the year 2045. It is admitted that this is a best case scenario.

8. Exhibit D is a cash flow analysis based only on current leases in place and renewals per leases. Debtor projects total cash flow of approximately $87 million through the year 2045.

9. Exhibit E is a cash flow analysis based only on current leases in place and renewals per leases that does not include rents from LA Fitness for the years 2010-2015. Debtor projects total cash flow of approximately $83.9 million through the year 2045.

The court notes that there is a pending motion by Debtor to reject the lease of L.A. Fitness. Exhibit E projects that the current lease in place with LA Fitness and its subsequent renewals total approximately $24.8 million. Thus the evidence presented to the court is that Debtor shall have total cash flow of at least $83.9 million minus $24.8 million through the year the 2045. This amounts to $59.1 million and is substantially more than the $36.5 million owed to the Bank.  While the $59.1 million is over a 35 year period, there was no evidence given regarding present value or net cash flow.

The Bank does not consent to the use of cash collateral from rents to pay professional fees, and argues that as a matter of law the cash collateral may not be used to pay professional fees or other

expenses of the estate which it asserts are not related to the preservation and maintenance of the project.

### Conclusions of Law

11 U.S.C. 363(c)(2) provides that a debtor-in-possession may not use, sell or lease cash collateral unless (A) each entity that has an interest in such collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. 363(e) provides that on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, the court, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

11 U.S.C. 361 provides that adequate protection may be provided by (1) requiring a cash payment or periodic cash payments; (2) providing an additional or replacement lien to the extent that the use of the property results in a decrease in the value of an entity's interest in the property; and (3)granting such other relief as will result in the realization by an entity of the indubitable equivalent of the entity's interest in the property.

Here, the Debtor has offered the continuation and extension of a lien in the Bank's favor on all post-petition rents; and the Debtor has agreed to make periodic payments to the Bank. The Debtor has also presented evidence that the Debtor will be able to make periodic payments to the Bank.

Despite the concessions offered by Debtor, the Bank maintains that cash collateral may not be used to pay professional fees or other

expenses of the estate not related to the preservation and maintenance of the project. The Bank cites In re River Oaks Limited Partnership, 166 B.R. 94 (Bankr. E.D. Mich. 1994), and In re Stearns Bldg., 165 F.3d 28 (6th Cir. 1998) for this proposition.

River Oaks is a case where the secured creditor objected to the debtor's proposal to pay from cash collateral expert witness fees. The bankruptcy court ruled for the debtor, and the creditor appealed. The district court held that monthly regeneration of rents and continued maintenance of debtor's apartment building did not provide adequate protection. The court stated that rents generated from a rental building that were used to operate and maintain the property does not necessarily constitute adequate protection; but went on to say that if there is adequate protection, then the debtor may use cash collateral for expenses not directly related to the operation and maintenance of the property. In re River Oaks Limited Partnership, 166 B.R. at 97-98.

Stearns is an unpublished decision where the Sixth Circuit said that if a debtor cannot provide adequate protection for the net rents, it follows that a debtor cannot use those rents. In re Stearns Bldg., 165 F.3d at 31

Thus there is no *per se* rule that cash collateral may not be used to pay professional fees or other expenses of the estate not related to the preservation and maintenance of the project (as opposed to being necessary for the debtor's on-going operations). Here, the Debtor has offered the continuation and extension of a lien in the Bank's favor on all post-petition rents and has agreed to make periodic payments to the Bank. The Debtor has also presented evidence that the debtor will be able to make periodic payments to the Bank.

However, the Bank argues that since there has been no showing that there is an equity cushion in the real property that there has still not been a showing of adequate protection. Additionally, the Bank argues that the grant of a replacement lien does not adequately protect it for the use of rents because it already has a lien in all post-petition rents. The Debtor argues that the continued operations of the debtor that provide for payment to the Bank constitutes sufficient adequate protection.

"Cash collateral rights in rents are similar to cash collateral rights in proceeds of receivables, particularly where the security interest also encompasses all of a debtor's operating assets. Under such a security arrangement, the creditor is considered to have adequate protection so long as the receivables being collected and used by the debtor are replaced by sufficient new receivables in which the creditor is granted a security interest. In these circumstances, net operating income, which is comparable to net rental revenues, remains stable, so that the secured claim is not declining in value. . . If the value of the Bank's secured claim were declining, it would lack adequate protection." In re Ledgemere Land Corp., 116 B.R. 338, 343 (Bankr. D. Mass. 1990) *citing* United Savings Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd., 484 U.S. 365 (1988) and In re Andrew J. Lane, 108 B.R. 6 (Bankr. D. Mass. 1989). Here, there is no proof that the value of the Bank's secured claim is declining.

If the Debtor is not allowed to use rents to pay its professionals, the bankruptcy case will effectively end and the going concern value of the business will be eviscerated to the detriment of all parties, including the Bank. *See* In re Delamore Elizabeth Place,

L.P., 09-36187 (Bankr. S.D. Ohio 2009). Thus a replacement lien does adequately protect the Bank for the use of rents. As discussed in Timbers, supra at 376, less is required to prove adequate protection during the first four months of a chapter 11 case, during which time the Debtor has the exclusive right to file a plan.  The court holds that the debtor has offered adequate protection.

Finally, the Bank argues that the requirements of 11 U.S.C. § 506(c) have not been met, and as a result, debtor should not be allowed to pay professional fees from the bank's cash collateral. This argument is misplaced. Debtor has not sought a surcharge, i.e., a request that the Bank pay the Debtor's professionals or other operating expenses. Debtor is only seeking the use of the Bank's cash collateral. Here, the use of the Bank's cash collateral to pay the Debtor's professional fees does not constitute a surcharge. As reviewed above, the Bank's interest is adequately protected, and there is no impairment of the Bank's interest in the nature of a surcharge, or of any other nature. See In re Coventry Commons Associates, 149 B.R. 109, 114 (Bankr. E.D. Mich. 1992).

For these reasons, the Limited Objection of Bank of America N.A. to Debtor's Motion for Use of Cash Collateral (DOC 64) is hereby OVERRULED, and the professional fee escrow shall be maintained pending further order of the court.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*Tracey N. Wise*
**Bankruptcy Judge**
**Dated: Tuesday, June 29, 2010**
**(tnw)**