# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF KENTUCKY
### COVINGTON DIVISION

IN RE:

CASE NO. 10-21162

BUTTERMILK TOWNE CENTER, LLC

CHAPTER 11

      DEBTOR

---

**DEBTOR'S DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE
BANKRUPTCY CODE FOR ITS PLAN OF REORGANIZATION**

---

Dated: August 26, 2010

**TAFT STETTINIUS & HOLLISTER LLP**

Timothy J. Hurley (OH 0006458)
Paige Leigh Ellerman (KY 88172)
Beth A. Silvers (KY 92202)
425 Walnut Street, Suite 1800
Cincinnati, OH  45202
(513) 381-2838 (Telephone)
(513) 381-0205 (Facsimile)
and
1717 Dixie Highway, Suite 910
Covington, KY  41011-4704
(859) 331-2838 (Telephone)
hurley@taftlaw.com
ellerman@taftlaw.com
silvers@taftlaw.com

**ATTORNEYS FOR DEBTOR AND
DEBTOR-IN-POSSESSION**

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................... 2
    A. Holders of Claims Entitled to Vote ........................................................................ 3
    B. Voting Procedures .................................................................................................. 3
    C. Confirmation Hearing ............................................................................................ 4
II.   OVERVIEW OF THE PLAN ................................................................................... 4
III.  OVERVIEW OF CHAPTER 11 ............................................................................... 6
IV.   BACKGROUND ...................................................................................................... 7
    A. Ownership and Business ......................................................................................... 7
    B. The Ground Lease ................................................................................................... 7
    C. The Tenants ............................................................................................................. 7
    D. LAF ......................................................................................................................... 8
    E. Prepetition Debt Structure ...................................................................................... 8
    F. Events Leading to Bankruptcy ............................................................................... 9
V.    THE CHAPTER 11 CASE ....................................................................................... 9
    A. Cash Collateral ....................................................................................................... 9
    B. Rejection of LAF Lease ........................................................................................ 10
VI.   SUMMARY OF THE PLAN .................................................................................. 10
    A. Introduction .......................................................................................................... 10
    B. Classification and Treatment of Claims and Equity Interests .............................. 10
        i.    Administrative Claims (Unclassified) ........................................................ 12
        ii.   Professional Fee Claims (Unclassified) ..................................................... 12
        iii.  Priority Tax Claims (Unclassified) ............................................................ 13
        iv.   Other Priority Claims (Class 1) ................................................................. 13
        v.    BOA Claim (Class 2) ................................................................................. 13
        vi.   LAF Claim (Class 3) .................................................................................. 13
        vii.  PILOT Claims (Class 4) ............................................................................. 13
        viii. General Unsecured Claims (Class 5) .......................................................... 14
        ix.   Equity Interests (Class 6) ........................................................................... 14
    C. Voting on the Plan ................................................................................................ 14
    D. Distributions under the Plan ................................................................................. 14
        i.    Delivery of Distributions ........................................................................... 14
        ii.   Distributions of Cash ................................................................................. 15
        iii.  Fractional and *De Minimis* Dollars ........................................................... 15
        iv.   Unclaimed Distributions ............................................................................ 15
        v.    Saturdays, Sundays, and Legal Holidays ................................................... 15
        vi.   Distributions as of the Voting Record Date ............................................... 15
        vii.  Time Bar to Cash Payments by Check ....................................................... 15
    E. Objections to and Resolution of Claims .............................................................. 16
    F. Estimation ............................................................................................................. 16
    G. Cancellation of Existing Instruments ................................................................... 16
    H. Nonconsensual Confirmation ............................................................................... 17
    I. Provisions Regarding Corporate Governance ....................................................... 17
    J. Effect of Confirmation .......................................................................................... 17
        i.    Continued Existence ................................................................................... 17

ii.   Vesting of Property ........................................................................................ 17
iii.  Tax-Exempt Status ........................................................................................ 17
iv.   Discharge ...................................................................................................... 17
v.    Mutual Releases ............................................................................................ 17
vi.   Third Party Releases ..................................................................................... 18
vii.  Exculpation and Limitation of Liability ...................................................... 19
viii. Injunction ...................................................................................................... 19
ix.   Binding Effect ............................................................................................... 20
x.    Setoff and Recoupment ................................................................................. 20
xi.   Preservation of Causes of Action ................................................................. 20
xii.  Votes Solicited in Good Faith ....................................................................... 20
xiii. Term of Bankruptcy Injunction or Stays ...................................................... 21
K. Retention of Jurisdiction ....................................................................................... 21
L. Miscellaneous Provisions ...................................................................................... 21
i.    Payment of Statutory Fees ............................................................................ 21
ii.   Modification of the Plan ............................................................................... 21
iii.  Governing Law .............................................................................................. 21
iv.   Withholding and Reporting Requirements .................................................... 21
v.    Waiver of Bankruptcy Rule 3020(e) and Federal Rule of Civil Procedure 62(a) ........ 22
vi.   Conflict ......................................................................................................... 22
M.    Executory Contracts and Unexpired Leases ................................................. 22
i.    Assumption and Rejection ............................................................................ 22
ii.   Cure ............................................................................................................... 22
iii.  Management Indemnification Rights and Insurance ..................................... 23
iv.   Reinstatement and Continuation of Insurance Policies ................................ 23
N. Conditions Precedent to Confirmation ................................................................... 23
O. Conditions Precedent to Effectiveness ................................................................... 24
P. Waiver of Conditions ............................................................................................. 24
Q. Effect or Failure of Conditions .............................................................................. 24
R. Vacatur of Confirmation Order .............................................................................. 25
VII.  CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN .................... 25
A. Federal Income Tax Consequences to the Debtor .................................................. 26
B. Federal Income Tax Consequences to Holders of Allowed Claims ....................... 26
VIII. CONFIRMATION PROCEDURES ............................................................................ 26
A. Confirmation Hearing ............................................................................................ 26
B. Statutory Requirements for Confirmation of the Plan ........................................... 27
C. Best Interests of Creditors Test/ Liquidation Analysis .......................................... 27
D. Feasibility .............................................................................................................. 27
E. Acceptance ............................................................................................................. 27
F. Unfair Discrimination and Fair and Equitable Tests ............................................. 27
IX.   RISKS ASSOCIATED WITH THE PLAN ................................................................... 28
X.    CONCLUSION AND RECOMMENDATIONS ............................................................ 30

# DISCLAIMER

THIS DISCLOSURE STATEMENT SUMMARIZES CERTAIN PROVISIONS OF THE PLAN, CERTAIN OTHER DOCUMENTS AND CERTAIN FINANCIAL INFORMATION OF THE DEBTOR.  THE DEBTOR BELIEVES THAT THESE SUMMARIES ARE FAIR AND ACCURATE; HOWEVER, YOU SHOULD READ THE PLAN IN ITS ENTIRETY.  IN THE EVENT OF ANY INCONSISTENCY OR DISCREPANCY BETWEEN A DESCRIPTION CONTAINED IN THE DISCLOSURE STATEMENT AND THE TERMS OF THE PLAN OR THE OTHER DOCUMENTS TO BE INCORPORATED BY REFERENCE, THE PLAN GOVERNS FOR ALL PURPOSES.  THE DEBTOR IS PROVIDING THE INFORMATION IN THIS DISCLOSURE STATEMENT SOLELY FOR PURPOSES OF INFORMING HOLDERS OF CLAIMS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN OR OBJECT TO CONFIRMATION.  NOTHING IN THIS DISCLOSURE STATEMENT MAY BE USED BY ANY ENTITY FOR ANY OTHER PURPOSE.

THE DEBTOR IS MAKING THE STATEMENTS AND PROVIDING THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT AS OF THE DATE OF THIS DISCLOSURE STATEMENT UNLESS OTHERWISE SPECIFIED.  THE FACTS SET FORTH IN THIS DISCLOSURE STATEMENT MAY HAVE CHANGED SINCE THE DATE THE DISCLOSURE STATEMENT WAS FILED. HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN MUST RELY ON THEIR OWN EVALUATION OF THE TERMS OF THE PLAN, INCLUDING ANY RISK FACTORS CITED IN THIS DISCLOSURE STATEMENT, IN DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN.

THE CONTENTS OF THIS DISCLOSURE STATEMENT MAY NOT BE RELIED UPON OR INTERPRETED AS PROVIDING ANY LEGAL, FINANCIAL, TAX OR BUSINESS ADVICE.  THE DEBTOR URGES EACH HOLDER OF A CLAIM TO CONSULT WITH ITS OWN ADVISORS.  FURTHERMORE, THE BANKRUPTCY COURT'S APPROVAL OF THE ADEQUACY OF THE DISCLOSURES CONTAINED IN THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL OF THE MERITS OF THE PLAN.

THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE, AND MAY NOT BE CONSTRUED AS, AN ADMISSION OF FACT, LIABILITY, STIPULATION OR WAIVER.

THE DEBTOR HAS NOT AUTHORIZED ANY PARTY TO GIVE ANY INFORMATION ABOUT OR CONCERNING THE PLAN OTHER THAN THAT CONTAINED IN THIS DISCLOSURE STATEMENT.  THE DEBTOR HAS NOT AUTHORIZED ANY REPRESENTATIONS CONCERNING THE DEBTOR OR THE VALUE OF ITS PROPERTY OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.  YOU SHOULD NOT RELY ON ANY INFORMATION, REPRESENTATIONS OR OTHER INDUCEMENTS MADE TO OBTAIN ACCEPTANCE OF THE PLAN THAT ARE OTHER THAN, OR INCONSISTENT

**WITH, THE INFORMATION CONTAINED IN THE DISCLOSURE STATEMENT AND THE PLAN.**

**THE DEBTOR'S MANAGEMENT HAS REVIEWED THE FINANCIAL INFORMATION PROVIDED IN THIS DISCLOSURE STATEMENT. ALTHOUGH THE DEBTOR USED ITS BEST EFFORTS TO ENSURE THE ACCURACY OF THIS INFORMATION, THE FINANCIAL INFORMATION CONTAINED IN, OR INCORPORATED BY REFERENCE INTO, THIS DISCLOSURE STATEMENT HAS NOT BEEN AUDITED.**

**ALL EXHIBITS TO THIS DISCLOSURE STATEMENT ARE INCORPORATED INTO AND MADE PART OF THIS DISCLOSURE STATEMENT. CAPITALIZED TERMS NOT DEFINED IN THIS DISCLOSURE STATEMENT HAVE THE MEANINGS SET FORTH IN THE PLAN.**

## I.    INTRODUCTION

Buttermilk Towne Center, LLC (the "Debtor" or the "Company") submits this Disclosure Statement pursuant to Section 1125 of Title 11 of the United States Code (the "Bankruptcy Code") to holders of Claims against the Debtor in connection with

(i)    the solicitation of acceptances of the Debtor's plan of reorganization dated August 26, 2010, as the Plan may be amended (the "Plan"), filed by the Debtor with the United States Bankruptcy Court for the Eastern District of Kentucky (the "Bankruptcy Court"), and

(ii)    the hearing to consider confirmation of the Plan (the "Confirmation Hearing") scheduled for _____, 2010 commencing at _____. The Plan provides for a reorganization of the Debtor's secured and unsecured debt obligations.

(iii)    Attached as exhibits to the Disclosure Statement are copies of the following documents:

- Exhibit A – the Plan;

- Exhibit B – order of the Bankruptcy Court dated _____, 2010 (the "Disclosure Statement Order"), which, among other things, approves this Disclosure Statement and establishes certain procedures with respect to solicitation and tabulation of votes to accept or reject the Plan;

- Exhibit C – Potential Causes of Action;

- Exhibit D – the Debtor's financial projections.

- Exhibit E – form of modifications to Bond Documents

In addition, a Ballot for the acceptance or rejection of the Plan is enclosed with the Disclosure Statement submitted to holders of Claims that are entitled to vote to accept or reject the Plan.

On _____, 2010, after notice and a hearing, the Bankruptcy Court signed and entered the Disclosure Statement Order approving the Disclosure Statement as containing adequate information of a kind and in sufficient detail to enable hypothetical, reasonable investors typical of the Debtor's Creditors entitled to vote on the Plan to make an informed judgment whether to accept or reject the Plan.  APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT, HOWEVER, CONSTITUTE A DETERMINATION BY THE BANKRUPTCY COURT AS TO THE FAIRNESS OR MERITS OF THE PLAN.

The Disclosure Statement Order, attached as Exhibit B, sets forth in detail the deadlines, procedures, and instructions for voting to accept or reject the plan and for filing objections to confirmation of the Plan, the record date for voting purposes, and the applicable standards for tabulating Ballots.  In addition, the Debtor will provide detailed voting instructions with each Ballot.  Each holder of a Claim entitled to vote on the Plan should read the Disclosure Statement, the Plan, the Disclosure Statement Order and the instructions accompanying the Ballot in their entirety before voting on the Plan.  These documents contain important information concerning the classification of Claims and Equity Interests for voting purposes and the tabulation of votes.  No solicitation of votes to accept the Plan may be made except pursuant to Section 1125 of the Bankruptcy Code.

**A.     Holders of Claims Entitled to Vote**

Pursuant to the provisions of the Bankruptcy Code, only holders of Allowed Claims or Equity Interests in Classes of Claims or Equity Interests that are Impaired are entitled to vote to accept or reject such plan.  Classes of Claims or Equity Interests in which the Holders of Claims or Equity Interests are Unimpaired under a Chapter 11 plan are deemed to have accepted the plan and are not entitled to vote to accept or reject the plan.

Pursuant to the Plan, holders of Allowed Claims and Equity Interests in Classes 1 and 6 are Unimpaired and will be deemed to have accepted the Plan.  Holders of Allowed Claims in Classes 2, 3, 4 and 5 are Impaired and will be entitled to vote to accept or reject the Plan.

The Bankruptcy Code defines "acceptance" of a plan by a class of claims as acceptance by creditors in that class that hold at least two-thirds in dollar amount and more than one-half in number of the claims that cast ballots for acceptance or rejection of the plan.

**B.     Voting Procedures**

If you are entitled to vote to accept or reject the Plan, a Ballot is enclosed for your vote**.** If you hold Claims in more than one Class and you are entitled to vote Claims in more than one Class, you will receive separate Ballots for each Class of Claims, which must be used for each separate Class of Claims.  Please vote and return your Ballots as directed on the Ballots to Taft Stettinius & Hollister LLP ("Taft"), counsel to the Debtor at the address provided on your Ballot.

DO NOT RETURN ANY NOTES OR SECURITIES WITH YOUR BALLOT.

TO BE COUNTED, YOUR BALLOT MUST BE RECEIVED NO LATER THAN 4:00 P.M., PREVAILING EASTERN TIME ON _____, 2010. ANY EXECUTED BALLOT RECEIVED THAT DOES NOT INDICATE EITHER AN ACCEPTANCE OR REJECTION OF THE PLAN SHALL BE DEEMED TO CONSTITUTE AN ACCEPTANCE OF THE PLAN AND THE RELEASES CONTAINED WITHIN THE PLAN. ANY EXECUTED BALLOT RECEIVED THAT INDICATES BOTH AN ACCEPTANCE AND REJECTION OF THE PLAN SHALL BE DEEMED TO CONSTITUTE AN ACCEPTANCE OF THE PLAN AND THE RELEASES CONTAINED WITHIN THE PLAN. ANY BALLOT RECEIVED AFTER THE VOTING DEADLINE MAY NOT BE COUNTED.

Any Claim in an Impaired Class as to which an objection or request for estimation is pending or which is scheduled by the Debtor as unliquidated, disputed or contingent and for which no proof of Claim has been filed is not entitled to vote unless the holder of such Claim has obtained an order of the Bankruptcy Court temporarily allowing such Claim for the purposes of voting on the Plan.

Pursuant to the Disclosure Statement Order, the Bankruptcy Court set _____, 2010, as the Voting Record Date. Accordingly, only holders of record as of _____, 2010, that otherwise are entitled to vote under the Plan will receive a Ballot and may vote.

If you are a holder of the Claim entitled to vote on the Plan and did not receive a Ballot, received a damaged Ballot or lost your Ballot, or if you have any questions concerning the Disclosure Statement, the Plan or the procedures for voting on the Plan, please e-mail Timothy J. Hurley, hurley@taftlaw.com.

### C.    Confirmation Hearing

Pursuant to Section 1128 of the Bankruptcy Code, the Confirmation Hearing will be held on _____, 2010, commencing at _____ prevailing eastern time, before the Honorable Tracey N. Wise, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Eastern District of Kentucky, 35 West Fifth Street, Room 306, Covington, Kentucky 41011 or such other location as the Bankruptcy Court directs. The Bankruptcy Court has directed that objections, if any, to confirmation of the Plan be served and filed so that they are received no later than _____, 2010, at 4:00 p.m. prevailing eastern time. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for the announcement of the adjournment date made at the Confirmation Hearing or any subsequent adjourned Confirmation Hearing.

## II.    OVERVIEW OF THE PLAN

The following table briefly summarizes the classification and treatment of Claims and Equity Interests under the Plan and the estimated Distributions to be received by the holders of Allowed Claims and Equity Interests under the Plan. This table is only a summary of the classification and treatment of Claims and Equity Interests under the Plan. You should refer to the entire Disclosure Statement and the Plan for a complete description of the classification and treatment of Claims and Equity Interests.

# SUMMARY OF CLASSIFICATION AND TREATMENT
# OF CLAIMS AND EQUITY INTERESTS UNDER THE PLAN

| Class | Type of Claim or Equity Interest | Treatment | Estimated Recovery |
|---|---|---|---|
| | Administrative Claims | Unimpaired; each holder of an Allowed Administrative Claim shall receive (a) Cash in an amount equal to the amount of such Allowed Administrative Claim, or (b) such other treatment as the Debtor or the Reorganized Debtor and such holder shall have agreed upon. | 100% |
| | Professional Fee Claims | Unimpaired; holders of Allowed Professional Fee Claims shall receive Cash in an amount equal to the allowed amount of their respective court-approved Professional Fee Claims | 100% |
| | Priority Tax Claims | Unimpaired; each holder of an Allowed Priority Tax Claim shall receive (a) regular installment payments in Cash of a total value, as of the Effective Date, equal to the amount of such Allowed Priority Tax Claim over a period ending not later than five years after the Petition Date and commencing on the later of the Effective Date and the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as is practicable; or (b) such other treatment as the Debtor or the Reorganized Debtor and such holder shall have agreed upon.. | 100% |
| 1 | Other Priority Claims | Unimpaired; each holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction of such Claim (a) payment in full in Cash in an amount equal to such Allowed Other Priority Claim on the later of the Effective Date and the date when such Claim becomes an Allowed Other Priority Claim, or as soon thereafter as is practicable; or (b) such other treatment as the Debtor or the Reorganized Debtor and such holder shall have agreed upon.. | 100% |
| 2 | BOA Claim | Impaired; the BOA Claim will accrue interest at 4.75% per annum and be paid in equal monthly installments of principal and interest based on a thirty year amortization schedule commencing on the Initial Distribution Date and will be repurchased six years from the Effective Date.  The BOA Claim will be prepayable without penalty.  The Bond Documents will be modified to reflect these payment and repurchase terms and the other provisions of this Plan but otherwise will remain in full force and effect.  If the Debtor or the Reorganized Debtor has not defaulted under any other provision of this Plan, the Debtor or the Reorganized Debtor and BOA may agree to different treatment of the BOA Claim. | 100% |
| 3 | LAF Claim | Impaired; the LAF Claim will accrue interest at 4.75% per annum and be paid in equal monthly installments of principal and interest based on a thirty year amortization schedule commencing on the Petition Date and will be paid in full eight years from the Effective Date.  The LAF Claim will be prepayable | 100% |

| | | | |
|---|---|---|---|
| | | without penalty.  The Reorganized Debtor may make payments to LAF in Cash, or LAF may deduct the Reorganized Debtor's monthly payment from rent due. On the Effective Date, LAF shall pay the rent due for May 2010 through the Effective Date less the amounts owed to LAF pursuant to this provision.  If the Debtor or the Reorganized Debtor has not defaulted under any other provision of this Plan, the Debtor or the Reorganized Debtor and LAF may agree to different treatment of the LAF Claim. | |
| 4 | PILOT Claims | Impaired; the Debtor shall pay all obligations owed to holders of Allowed PILOT Claims as of the Effective Date through equal monthly installments, payable on or before the 25th day of each month, for thirty-six months.  The Debtor shall make such installment payments in addition to monthly installments payments due on account of obligations owed after the Effective Date. | 100% |
| 5 | General Unsecured Claims | Impaired; Allowed General Unsecured Claims shall accrue interest at a rate of 4.75% per annum and be paid in equal monthly installments of principal and interest amortized on a thirty year schedule commencing on the Initial Distribution Date and will be paid in full ten years from the Effective Date. Allowed General Unsecured Claims will be prepayable without penalty.  If the Debtor or the Reorganized Debtor has not defaulted under any other provision of this Plan, the Debtor or the Reorganized Debtor and the holder of an Allowed General Unsecured Claim may agree to different treatment of such Claim. | 100% |
| 6 | Equity Interests | Unimpaired; holders of Equity Interests shall retain such Equity Interests in the Debtor and the Reorganized Debtor and shall cause to be contributed to the Debtor or the Reorganized Debtor on or after the Effective Date an amount not to exceed $_____ to the extent funds are necessary to make the Distributions under the Plan. | Not applicable |

## III.    OVERVIEW OF CHAPTER 11

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor is authorized to reorganize its business for the benefit of itself, its creditors and its equity holders.  In addition to permitting the rehabilitation of a debtor, another goal of Chapter 11 is to promote equality of treatment for similarly situated creditors and similarly situated equity interest holders with respect to the distribution of a debtor's assets.  The commencement of a Chapter 11 case creates an estate that is comprised of all of the legal and equitable interests of the debtor as of the filing date.  The Bankruptcy Code provides that the debtor may continue to operate its business and remain in possession of its property as a "debtor-in-possession."

The principal objective of a Chapter 11 reorganization case is the consummation of a plan of reorganization.  A plan of reorganization sets forth the means for satisfying claims and equity

interests in the debtor.  Confirmation of a plan of reorganization by the Bankruptcy Court binds the debtor, any issuer of securities under the plan, any person acquiring property under the plan, and any creditor or equity interest holder of a debtor.  Subject to certain limited exceptions, the order approving confirmation of a Chapter 11 plan discharges a debtor from any debt that arose prior to the date of confirmation of the plan and substitutes obligations as specified by the plan.  After a plan or reorganization has been filed, the holders of claims against or equity interests in a debtor that are impaired by the plan are permitted to vote to accept or reject the plan.  Before soliciting acceptances of the proposed plan, however, Section 1125 of the Bankruptcy Code requires a debtor to prepare and obtain court approval of a disclosure statement containing adequate information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment about the plan.  The debtor submits this disclosure statement to satisfy Section 1125's requirements.

## IV.    BACKGROUND

### A.    Ownership and Business

The Debtor is a limited liability company organized under the laws of the State of Ohio on August 1, 2004**.**  The Debtor has six members:  Timothy S. Baird, Tina Shmidt, Steve Kelly, Nicole Harris, Bill Tippmann, and LAD Holdings, LLC.  The Debtor has no employees.  Its day-to-day operations are conducted by Site Advantage Real Estate Services ("Site Advantage"), a property management company principally owned by Timothy S. Baird.  The Debtor pays a monthly fee to Site Advantage for its services.  Matt Daniels and Timothy S. Baird are the managers of the Debtor.  The Debtor was formed to develop and own the commercial real estate site located in Crescent Springs, Kenton County, Kentucky known as Buttermilk Towne Center (the "Project").

### B.    The Ground Lease

On December 1, 2007, the Debtor entered into a lease (the "Ground Lease") with the City of Crescent Springs, Kentucky (the "City")**.**  The Ground Lease provides that the Debtor will pay the City rent for the real property upon which the Project is located.  The Ground Lease has a 25-year term ending on December 1, 2032.  The Debtor's rent under the Ground Lease is used to pay principal and interest on certain bonds issued by the City.  These bonds are described in detail below.  At the end of the lease term, the City will convey the real property to the Debtor without further payment.

### C.    The Tenants

The Debtor has entered into long term leases with four anchor tenants at the Project:  Home Depot USA, Inc**.,** Remke Markets, Inc., Morris Furniture Company of Cincinnati, Inc. ("Ashley Furniture"), and L.A. Fitness International, LLC ("LAF").  The Debtor estimates that its tenants employ in excess of 400 full- and part-time employees.  The Debtor has pending proposals to complete several remaining lots at the Project, which would result in additional development, construction jobs and permanent employment opportunities.

### D.    LAF

The Debtor and LAF, a California limited liability company, entered into a lease dated October 2, 2007. Under this lease, the Debtor leases to LAF approximately 45,867 square feet of space for use as a fitness club. The LAF lease will expire on June 30, 2024 but is subject to three consecutive five-year renewal options. The lease obligated the Debtor to perform certain improvements and to provide certain funding for the construction of a building and related improvements for LAF's location.

In 2009, LAF commenced an action against the Debtor in the Kenton County, Kentucky Circuit Court related to the lease. To resolve this lawsuit, LAF and the Debtor executed a Settlement Agreement dated August 17, 2009. This agreement was approved by the Kentucky Circuit Court on August 26, 2009, altered the party's rights and obligations under the lease, and otherwise provided that the lease would continue in effect. Among other things, the Settlement Agreement requires the Debtor to pay LAF the amount of $4,042,503.40 over time.

### E.    Prepetition Debt Structure

The Debtor entered into a Construction Financing Agreement with LaSalle Bank National Association n/k/a Bank of America, N.A. (the "Lender" or "BOA"). This agreement obligated the Lender to loan the Debtor up to $34,700,000.00 for the Project's construction through the purchase of bonds issued by the City (the Construction Financing Agreement as amended will be referred to as the "Financing Agreement"). In order to provide financing for the Project's development, the City issued Taxable, Industrial Building Revenue Bonds, Series 2007 (Buttermilk Towne Center, LLC Project), dated December 28, 2007 (the "Bonds"), outstanding as of March 29, 2010 in the principal amount of $34,664,322.49, plus interest in the amount of $1,719,934.30. Political subdivisions in Kentucky frequently issue industrial revenue bonds such as these as a method of exempting projects from real estate taxes. The Bonds are secured by an amended and restated Trust Indenture dated as of December 1, 2007 between the City and U.S. Bank National Association as Trustee for the holders of the Bonds. Except for certain expense, reimbursement and indemnity payments, the City's rights under the Ground Lease and all lease payments are assigned to the Trustee as security for the Bonds.

The Debtor's obligations under the Ground Lease and the Financing Agreement are secured by (i) an amended and restated open-end mortgage, security agreement and an agreement as to real estate matters dated as of December 1, 2007 and recorded December 28, 2007 with the Kenton County Clerk, Covington, Kentucky; and (ii) an assignment of rents and subleases dated as of August 1, 2004 and recorded September 1, 2004 with the Kenton County Clerk, Covington, Kentucky, executed by the Debtor in favor of the Trustee (the "Rent Assignment"). Timothy S. Baird and Matt Daniels also guaranteed payment of principal and interest on the Bonds pursuant to a guarantee of payment and completion dated as of August 1, 2004. The Bonds are scheduled to mature on December 1, 2032 and were subject to mandatory redemption through monthly payments of principal and interest beginning February 1, 2008 and on the first day of each month thereafter. The Bonds were subject to mandatory purchase by the Debtor on December 31, 2009.

### F.    Events Leading to Bankruptcy

The Debtor's efforts to either sell or restructure its obligations were unsuccessful due to the global economic devastation that began in late 2008. The Debtor was unable to make the required mandatory redemption payments and failed to purchase the outstanding Bonds on December 31, 2009. Additionally, the Debtor has been unable to make payments due under the Settlement Agreement with LAF, such that LAF filed a judgment lien against the Debtor on February 26, 2010.

Subsequently, on or about March 22, 2010, the Kenton County Board of Education served several of the Debtor's tenants with notice to garnish rents due and owing by the Debtor's tenants. Notice of garnishment was served by the Board in an effort to collect on a judgment in the amount of $158,972.84 the Board obtained as a result of the Debtor's failure to comply with its payment in lieu of taxes agreement with the Board.

On or about April 7, 2010, BOA commenced a receivership action against the Debtor in the United States District Court for the Eastern District of Kentucky. In that action, styled *Bank of America, N.A. vs. Buttermilk Towne Center, LLC*, Case No. 10-CV-00076, BOA asserted that the Debtor was in default of its obligations under the Financing Agreement and the Bonds in the principal amount of $34,664,322.49, plus interest in the amount of $1,719,934.30, attorney fees, expenses and late fees. As a result, the Debtor commenced this Chapter 11 case.

The Debtor believes that it is best positioned to maintain the current occupancy rates and to continue to increase occupancy and tenant goodwill at the Project. The Plan will provide for the Debtor to pay all of its creditors in full, permit continued improvements in viable space for additional tenants, and enable the Project to reach its full potential. As a result, the Debtor believes that confirmation of the Plan is the best alternative for its estate, its creditors, and other parties-in-interest.

## V.    THE CHAPTER 11 CASE

### A.    Cash Collateral

To provide the Debtor with the liquidity necessary to continue operating post-petition, the Debtor sought Court approval of its use of BOA's cash collateral through a motion filed on the Petition Date (the "Cash Collateral Motion"). BOA filed two objections to the Cash Collateral Motion. In its first objection, BOA argued that the Debtor had absolutely assigned its right to receive rent payments to BOA and that the rents were no longer property of the estate. In its second objection, BOA argued that the Debtor could not use cash collateral to pay professional fees. The Bankruptcy Court overruled both objections and entered interim orders authorizing the Debtor's use of cash collateral. BOA timely appealed these orders, and BOA's appeals are pending. On June 1, 2010, the Bankruptcy Court entered a final order approving the Debtor's use of cash collateral. On August 25, 2010, the Bankruptcy Appellate Panel of the United States Court of Appeals for the Sixth Circuit stayed the Bankruptcy Court's order regarding the Debtor's use of cash collateral to pay professional fees. The Debtor has and will continue to use cash collateral, subject to Court approval, to fund the Debtor's working capital requirements during the Chapter 11 Case.

B.      **Rejection of LAF Lease**

On the Petition Date, the Debtor sought authorization from the Bankruptcy Court to reject its lease with LAF pursuant to Section 365 of the Bankruptcy Code.  LAF filed a limited objection to the Debtor's motion.  In its objection, LAF stated its intent to remain on the premises and asked the Bankruptcy Court to permit LAF to reduce its post-rejection rent obligation to zero until LAF's prepetition claim against the Debtor has been paid in full.  On July 27, 2010, the Bankruptcy Court granted the Debtor's motion to reject LAF's lease and stated that it would address LAF's limited objection by a separate order.  On August 19, 2010, the Bankruptcy Court entered an order declining to address LAF's right of offset in the context of the motion to reject its lease.

On July 9, 2010, LAF commenced an adversary proceeding against the Debtor.  In its Complaint, LAF sought a declaratory judgment that a Subordination, Non-Disturbance, and Attornment Agreement among the Debtor, LAF, BOA, and the City entitles LAF to reduce its post-rejection rent obligation to zero until LAF's prepetition claim against the Debtor has been paid in full.  The Debtor filed a motion for judgment on the pleadings on August 18, 2010.  That motion is pending.

## VI.    SUMMARY OF THE PLAN

**THE FOLLOWING SECTIONS SUMMARIZE KEY INFORMATION CONTAINED IN THE PLAN.  THIS SUMMARY REFERS TO AND IS QUALIFIED IN ITS ENTIRETY BY THE PLAN.  THE TERMS OF THE PLAN GOVERN IN THE EVENT THAT ANY INCONSISTENCY ARISES BETWEEN THE DISCLOSURE STATEMENT AND THE PLAN.  THE BANKRUPTCY COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT.  IF THE BANKRUPTCY COURT CONFIRMS THE PLAN, THEN IT WILL BIND ALL HOLDERS OF CLAIMS OR EQUITY INTERESTS.**

A.      **Introduction**

The Plan provides for the reorganization of the Debtor's debt.  The Debtor believes this restructuring provides a greater distribution than the holders of Claims and Equity Interests would receive if the Chapter 11 Case was converted to a case under Chapter 7 of the Bankruptcy Code.  The Plan is annexed to this Disclosure Statement as Exhibit A and is incorporated into this Disclosure Statement by reference.

B.      **Classification and Treatment of Claims and Equity Interests**

The Plan classifies Claims and Equity Interests separately and provides different treatment for different Classes of Claims and Equity Interests in accordance with the Bankruptcy Code.  As described more fully below, the Plan provides that holders of the various Classes of Claims will receive such amounts and types of consideration to give proper effect to the different rights and circumstances of holders of Claims and Equity Interests in each Class.

Only claims and equity interests that are "allowed" may receive distributions under a Chapter 11 plan.  A claim or equity interest is allowed if the Debtor or the Reorganized Debtor

agrees, or, in the event of a dispute, the Bankruptcy Court determines, that the claim or equity interest is a valid obligation of or interest in the Debtor.  Section 502(a) of the Bankruptcy Code provides that a timely filed claim or equity interest is automatically allowed unless the debtor or another party in interest objects.  However, Section 502(b) of the Bankruptcy Code specifies certain claims that may not be allowed in a bankruptcy case even if a proof of claim is filed.  These include, without limitation, claims that are unenforceable under the governing agreement or applicable nonbankruptcy law, claims for unmatured interest of unsecured and/or undersecured obligations, property tax claims in excess of the debtor's equity in the property, claims for certain services that exceed their reasonable value, nonresidential real property lease and employment contract rejection damage claims in excess of specified amounts, and late-filed claims.  In addition, except as otherwise provided in any order establishing a Bar Date, Bankruptcy Rule 3003(c)(2) prohibits the allowance of any claim or equity interest that either is not listed on the debtor's schedules or is listed as disputed, contingent, or unliquidated if the holder has not filed a proof of claim or equity interest before the deadline to file proofs of claim and equity interests.

The Bankruptcy Code also requires that, for purposes of treatment and voting, a Chapter 11 plan must divide the different claims against, and equity interests in, a debtor into separate classes based upon their legal nature and treatment under a proposed plan of reorganization.  Claims and equity interests of substantially similar legal nature are generally classified together, unless the equities of a case support otherwise.  Because an entity may hold multiple claims and/or equity interests which give rise to different legal rights, the holders of such claims and/or equity interests may find themselves as members of multiple classes of claims and/or equity interests.

Under a Chapter 11 plan of reorganization, the separate classes of claims and equity interests must be designated either as "impaired" (altered by the plan) or "unimpaired" (unaltered by the plan).  If a class of claims or interests is "impaired," the Bankruptcy Code affords certain rights to the holders of such claims or interests, such as the right to vote on the plan (unless the plan provides for no distribution to the holder, in which case the holder is deemed to reject the plan), and the right to receive an amount under the Chapter 11 plan that is not less than the value the holder would receive if the debtor were liquidated under Chapter 7 of the Bankruptcy Code.  Under Section 1124 of the Bankruptcy Code, a class of claims or interests is "impaired" unless, with respect to each claim or interest of such class, the plan (i) does not alter the legal, equitable or contractual rights of the holders of such claims or interests or (ii) irrespective of the holders' right to receive accelerated payment of such claims or interests after the occurrence of a default, cures all defaults (other than those arising from, among other things, the debtor's insolvency or the commencement of the bankruptcy case), reinstates the maturity of the claims or interests in the class, compensates the holders of such claims or interests for damages incurred as a result of their reasonable reliance upon any acceleration rights and does not otherwise alter their legal, equitable or contractual rights.  Typically, this means that the holder of an unimpaired claim will receive on the later of the effective date of the plan or the date on which amounts owing are due and payable, payment in full, in cash, with post-petition interest to the extent permitted and provided under the governing agreement between the parties (or, if there is no agreement, under applicable nonbankruptcy law), and the remainder of the debtor's obligations, if any, will be performed as they come due in accordance with their terms.  Thus, other than its right to

accelerate the debtor's obligations, the holder of an unimpaired claim will be placed in the same position it would have been in had the debtor's case not been commenced.

Consistent with these requirements, the Plan divides the Claims and Equity Interests into the following Classes and affords the treatments described below:

| Unclassified | Administrative Claims | Paid in full |
| Unclassified | Priority Tax Claims | Paid in full |
| Unclassified | Professional Fee Claims | Paid in full |
| Class 1 | Other Priority Claims | Unimpaired |
| Class 2 | BOA Claim | Impaired |
| Class 3 | LAF Claim | Impaired |
| Class 4 | PILOT Claims | Impaired |
| Class 5 | General Unsecured Claims | Impaired |
| Class 6 | Equity Interests | Unimpaired |

For purposes of computing distributions under the Plan, Allowed Claims do not include postpetition interest unless the Plan expressly provides otherwise.

### i.    Administrative Claims (Unclassified)

Each holder of an Allowed Administrative Claim shall receive (a) Cash in an amount equal to the amount of such Allowed Administrative Claim on the later of the Effective Date and the date that is ten days after the date such Administrative Claim becomes an Allowed Administrative Claim; or (b) such other treatment as the Debtor or the Reorganized Debtor and such holder shall have agreed upon.

### ii.    Professional Fee Claims (Unclassified)

All requests for compensation or reimbursement of Professional Fee Claims shall be filed and served on the Debtor or, as applicable, the Reorganized Debtor and its counsel, the United States Trustee, counsel to BOA, and such other entities designated by the Bankruptcy Rules, the Confirmation Order, or any other order(s) of the Court, no later than 45 days after the Effective Date.  Holders of Professional Fee Claims that are required to file and serve applications for final allowance of their Professional Fee Claims and that do not file and serve such applications by this deadline shall be forever barred from asserting such Professional Fee Claims against the Debtor, the Reorganized Debtor or its property, and such Professional Fee Claims shall be deemed discharged as of the Effective Date.

### iii.     Priority Tax Claims (Unclassified)

Each holder of an Allowed Priority Tax Claim shall receive regular installment payments in Cash of a total value, as of the Effective Date, equal to (a) the amount of such Allowed Priority Tax Claim over a period ending not later than five years after the Petition Date and commencing on the later of the Effective Date and the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as practicable; or (b) such other treatment as the Debtor or the Reorganized Debtor and such holder shall have agreed upon.

### iv.     Other Priority Claims (Class 1)

*Distributions.*  Each holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction of such Claim (a) payment in full in Cash in an amount equal to such Allowed Other Priority Claim on the later of the Effective Date and the date when such Claim becomes an Allowed Other Priority Claim, or as soon thereafter as is practicable; or (b) such other treatment as the Debtor or the Reorganized Debtor and such holder shall have agreed upon.

*Impairment and Voting.*  Class 1 is Unimpaired.  Holders of Allowed Other Priority Claims are presumed to accept the Plan and are not entitled to vote to accept or reject the Plan.

### v.     BOA Claim (Class 2)

*Distributions.*  The BOA Claim will accrue interest at 4.75% per annum and be paid in equal monthly installments of principal and interest based on a thirty year amortization schedule commencing on the Initial Distribution Date and will be repurchased six years from the Effective Date.  The BOA Claim will be prepayable without penalty.  The Bond Documents will be modified to reflect these payment and repurchase terms and the other provisions of this Plan but otherwise will remain in full force and effect.  If the Debtor or the Reorganized Debtor has not defaulted under any other provision of this Plan, the Debtor or the Reorganized Debtor and BOA may agree to different treatment of the BOA Claim.

*Impairment and Voting.*  Class 2 is Impaired.  BOA is entitled to vote to accept or reject the Plan.

### vi.     LAF Claim (Class 3)

*Distributions.*   The LAF Claim will accrue interest at 4.75% per annum and be paid in equal monthly installments of principal and interest based on a thirty year amortization schedule commencing on the Petition Date and will be paid in full eight years from the Effective Date. The LAF Claim will be prepayable without penalty.  The Reorganized Debtor may make payments to LAF in Cash, or LAF may deduct the Reorganized Debtor's monthly payment from rent due.  On the Effective Date, LAF shall pay the rent due for May 2010 through the Effective Date less the amounts owed to LAF pursuant to this provision.  If the Debtor or the Reorganized Debtor has not defaulted under any other provision of this Plan, the Debtor or the Reorganized Debtor and LAF may agree to different treatment of the LAF Claim.

*Impairment and Voting.*  Class 3 is Impaired.  LAF is entitled to vote to accept or reject the Plan.

### vii.    PILOT Claims (Class 4)

*Distributions*.  The Reorganized Debtor shall pay all obligations owed to holders of Allowed PILOT Claims as of the Effective Date through equal monthly installments, payable on or before the 25th day of each month, for thirty-six months, prepayable without penalty.  The Debtor shall make such installment payments in addition to the scheduled payments due on account of obligations owed after the Effective Date.  Payments to holders of Allowed PILOT Claims shall commence on the Initial Distribution Date.  If the Debtor or the Reorganized Debtor has not defaulted under any other provision of this Plan, the Debtor or the Reorganized Debtor and the holder of an Allowed PILOT Claim may agree to different treatment of such Claim.

*Impairment and Voting*.  Class 4 is Impaired.  Holders of Allowed PILOT Claims are entitled to vote to accept or reject the Plan.

### viii.    General Unsecured Claims (Class 5)

*Distributions*.  Allowed General Unsecured Claims shall accrue interest at a rate of 4.75% per annum and be paid in equal monthly installments of principal and interest amortized on a thirty year schedule commencing on the Initial Distribution Date and will be paid in full ten years from the Effective Date.  Allowed General Unsecured Claims will be prepayable without penalty.  If the Debtor or the Reorganized Debtor has not defaulted under any other provision of this Plan, the Debtor or the Reorganized Debtor and the holder of an Allowed General Unsecured Claim may agree to different treatment of such Claim.

*Impairment and Voting*.  Class 5 is Impaired.  Holders of Allowed General Unsecured Claims are entitled to vote to accept or reject the Plan.

### ix.    Equity Interests (Class 6)

*Distributions*.  Holders of Equity Interests shall retain such Equity Interests in the Debtor and the Reorganized Debtor and shall cause to be contributed to the Debtor or the Reorganized Debtor on or after the Effective Date an amount not to exceed $_____ to the extent funds are necessary to make the Distributions under the Plan.

*Impairment and Voting*.  Class 6 is Unimpaired.  Holders of Equity Interests are presumed to accept the Plan and are not entitled to vote to accept or reject the Plan.

### C.    Voting on the Plan

Each holder of a Claim in Classes 2, 3, 4 and 5 shall be entitled to vote to accept or reject the Plan as provided in the Disclosure Statement Order or any other order(s) of the Court.

### D.    Distributions under the Plan

### i.    Delivery of Distributions

Distributions shall be made by the Reorganized Debtor or its designee to the holders of Allowed Claims at the addresses set forth on the Schedules, unless such addresses are superseded

by proofs of claim or transfers of claim filed pursuant to Bankruptcy Rule 3001 on or prior to the Voting Record Date (or at the last know address of such holders if the Debtor or the Reorganized Debtor have been notified in writing of a change of address).

### ii.        Distributions of Cash

Any payment of Cash by the Reorganized Debtor shall be made by either a check or wire transfer drawn on or from a domestic bank selected by the Reorganized Debtor, at the sole option and in the sole discretion of the Reorganized Debtor.

### iii.       Fractional and *De Minimis* Dollars

Notwithstanding any contrary provision of this Plan, the Reorganized Debtor shall not be required to make any payment of a fractional dollar, and the Reorganized Debtor shall not be required to issue payment for any amount under $5.00.  Wherever any payment of a fraction of a dollar would otherwise be called for, the Reorganized Debtor shall round down such fraction to the nearest whole dollar.

### iv.       Unclaimed Distributions

Any Distribution of Cash which remains unclaimed for a period of 90 days after it has been delivered (or attempted to be delivered) shall be transferred to and become property of the Reorganized Debtor notwithstanding any laws to the contrary, and any and all entitlement by the holder of such Claim to such Distribution shall be extinguished and barred.

### v.        Saturdays, Sundays, and Legal Holidays

If the Plan requires the Reorganized Debtor to make any payment or perform any act on a date that is not a Business Day, the Reorganized Debtor may make such payment or perform such act on the next Business Day and shall be deemed to have completed the payment or act as of the required date.

### vi.       Distributions as of the Voting Record Date

As of the close of business on the Voting Record Date, the Claims register shall be closed, and there shall be no further changes in the record holders of any Claims.  The Debtor and the Reorganized Debtor shall have no obligation to recognize any Claim filed or transfer of any Claims occurring after the Voting Record Date.  The Debtor and the Reorganized Debtor shall instead be entitled to recognize and deal for purposes under the Plan with only those record holders stated on the Claims register as of the close of business on the Voting Record Date.

### vii.      Time Bar to Cash Payments by Check

Checks issued for Distributions will be null and void if not negotiated within 90 days after their issuance.  After the expiration of the 90-day period, such Distributions will be treated as unclaimed in accordance with the Plan and Section 347 of the Bankruptcy Code.

E.      **Objections to and Resolution of Claims**

The Reorganized Debtor shall have the right to make and file objections to or otherwise contest allowance of Claims subsequent to the Effective Date.  Unless otherwise ordered by the Court, objections to Claims or other proceedings concerning the allowance of Claims shall be filed and served upon the holder of the Claim as to which the objection is made or the proceeding commenced by the Claim Objection Deadline.

The Reorganized Debtor may litigate to judgment, settle or withdraw objections to Claims or proceedings concerning the allowance of Claims in its discretion.  Notwithstanding any contrary provision of this Plan, the Reorganized Debtor shall not be required to file objections to Unliquidated Claims, which shall be liquidated, determined, and satisfied in the ordinary course of business by the Reorganized Debtor.

The Reorganized Debtor shall liquidate and determine all Unliquidated and Disputed Claims in the ordinary course of business, without need for Court approval, including, through access to available insurance.  Once liquidated and determined, Unliquidated Claims shall be treated in the same manner as Class 5 Claims.

On and after the Effective Date, holders of Unliquidated Claims may commence or continue any action, litigate to judgment, or settle any such Unliquidated Claims solely to the extent and on the basis set forth in a timely and validly filed proof of Claim, without prejudice to any defense, right of offset or other rights, claims or counterclaims, known or unknown, available or belonging to the Debtor or the Reorganized Debtor.

Neither the Debtor nor the Reorganized Debtor shall be required to establish reserves for the payment of Disputed Claims or Unliquidated Claims.

F.      **Estimation**

The Debtor or the Reorganized Debtor may, at any time, request that the Court estimate any Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code, regardless of whether any party has previously objected to such Disputed Claim.  The Court will retain jurisdiction to estimate any Claim at any time, including during proceedings concerning any objection to such Claim.  In the event that the Court estimates a Disputed Claim, the estimated amount may constitute either (a) the Allowed amount of the Claim; (b) the estimate to be used in calculating the Distribution for such Claim; or (c) a maximum limitation on the Claim as determined by the Court.  In the case of Unliquidated Claims arising from personal injury or wrongful death actions, the Court may estimate such Unliquidated Claims for the purpose of confirming the Plan.  If the estimated amount constitutes a maximum limitation on the Claim, the Debtor or Reorganized Debtor may elect to object to ultimate payment of such Claim.  The aforementioned Claim objection, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another.

G.      **Cancellation of Existing Instruments**

Unless otherwise expressly provided in this Plan, any promissory note or other instrument or security evidencing a Claim against the Debtor shall be deemed cancelled.

### H.      Nonconsensual Confirmation

If any Impaired Class of Claims entitled to vote shall not accept the Plan by the majority provided in Section 1126(c) of the Bankruptcy Code, the Debtor reserves the right to amend the Plan or to request that the Court confirm the Plan pursuant to Section 1129(b) of the Bankruptcy Code, or both.

### I.      Provisions Regarding Corporate Governance

The Reorganized Debtor shall be governed by the documents governing the Debtor and shall be managed by the Debtor's managers.

### J.      Effect of Confirmation

#### i.      Continued Existence

The Reorganized Debtor shall continue to exist on and after the Effective Date as a separate legal entity with all of the powers available to such legal entity under applicable law, without prejudice to any right to alter or terminate such existence in accordance with such applicable law. On and after the occurrence of the Effective Date, the Reorganized Debtor shall be authorized to operate its businesses, and to use, acquire or dispose of assets without supervision or approval by the Court, and free from any restrictions of the Bankruptcy Code or the Bankruptcy Rules, subject only to the terms and conditions of the Plan as well as the documents executed and delivered in connection with the Plan.

#### ii.      Vesting of Property

Except as otherwise expressly provided in the Plan, on the Effective Date, or as soon as practicable thereafter, the Reorganized Debtor shall be vested with all of the property of the Estate free and clear of all Claims, Liens, encumbrances, charges and other interests of Creditors and Equity Interest holders.

#### iii.      Tax-Exempt Status

Nothing contained in the Plan shall impair or alter the tax-exempt status of the Project (as defined in the Disclosure Statement). BOA, the Debtor, the Reorganized Debtor, and the City of Crescent Springs, Kentucky, shall cooperate to draft and execute any additional documents or amendments to documents required in order to effectuate this provision.

#### iv.      Discharge

**Except as otherwise provided in this Plan, the rights afforded by the Plan and the treatment of all Claims and Equity Interests pursuant to the Plan shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Equity Interests of any kind whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor and the Reorganized Debtor, or any of their respective assets or properties, arising prior to the Effective Date. Except as otherwise expressly specified in the Plan, the Confirmation Order shall act as of the Effective Date as a**

discharge of all debts of, Claims against, Liens on, and Equity Interests in the Debtor, its assets and properties, arising at any time before the Effective Date, regardless of whether a proof of Claim or Equity Interest with respect thereto was filed, whether the Claim or Equity Interest is Allowed, or whether the holder votes to accept the Plan or is entitled to receive a Distribution under the Plan.  Except as otherwise expressly specified in the Plan, after the Effective Date, any holder of such discharged Claim shall be precluded from asserting any other or further Claim against the Debtor, the Reorganized Debtor or any of their respective assets or properties, based on any document, instrument, act, omission, transaction, or other activity of any kind or nature that occurred before the Effective Date.

> ### v.    Releases by Debtor and Reorganized Debtor

On the Effective Date, the Debtor and the Reorganized Debtor shall be deemed to and hereby unconditionally and irrevocably release the Non-Debtor Released Parties from any and all claims, interests, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such entity would have been legally entitled to assert (whether individually or collectively), relating to any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, the Chapter 11 Case, or the Plan, except that (i) no individual shall be released from any act or omission that constitutes gross negligence, willful misconduct or fraud, and (ii) the foregoing release shall not apply to any express contractual or financial obligations owed to the Debtor or the Reorganized Debtor or any right or obligation arising under or that is part of the Plan or an agreement entered into pursuant to, in connection with or contemplated by, the Plan.

> ### vi.    Third Party Releases

On and after the Effective Date, all holders of Claims and Equity Interests, by virtue of their treatment contemplated under the Plan, shall have and shall be deemed to have forever released, discharged and covenanted not to sue or otherwise seek recovery from any Released Party on account of any and all Claims or Equity Interests, including but not limited to claims, interest obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claims asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Chapter 11 Case, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of Claims and Equity Interests prior to or in the Chapter 11 Case, the negotiation, formulation, or preparation of the Plan and the Disclosure Statement, or related agreements, instruments, or other documents, upon any other act or omissions, transaction, agreement, event or other occurrence taking place on or before the Effective Date; provided, however, that (i) none of the Released Parties shall be released from any claim based on any act or omission that constitutes gross negligence, willful misconduct or fraud, (ii) the foregoing release shall not apply to rights or obligations arising under or that are part of the Plan or an agreement

entered into pursuant to, in connection with, or contemplated by, the Plan and (iii) the foregoing release shall not be construed to prohibit a party in interest from seeking to enforce the terms of the Plan or an agreement entered into pursuant to, in connection with, or contemplated by the Plan.  Notwithstanding any contrary provision of the Plan, the releases of the Released Parties shall extend only to claims arising against such Released Parties in their capacities as parties in interest in the Chapter 11 Case.  Nothing contained in this Article IX of the Plan shall release any Person from any guarantees of the Debtor's obligations to BOA.

     **vii.**     **Exculpation and Limitation of Liability**

The Exculpated Parties (i) shall have no liability whatsoever to any holder or purported holder of a Claim or Equity Interest for any act or omission in connection with, or arising out of the restructuring, the Chapter 11 Case, the Plan, the Disclosure Statement, the negotiation, formulation or preparation of the Plan, the Disclosure Statement, or related agreements, instruments, or other documents, the pursuit of approval of the Disclosure Statement or the solicitation of votes for and confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan, or any transaction contemplated by the Plan or the Disclosure Statement or in furtherance thereof except for any act or omission that constitutes gross negligence, willful misconduct or fraud as determined by a Final Order, and (ii) in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.  This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable laws or rules protecting any of the Exculpated Parties from liability.

Notwithstanding any contrary provision of the Plan, the Plan shall not release, discharge, or exculpate any non-Debtor party from any debt owed to the United States Government and or its/ agencies (the "U.S. Government"), or from any liability arising under the Internal Revenue Code, or the environmental laws, securities laws or criminal laws of the United States.  In addition, the Plan shall not enjoin or prevent the U.S. Government from collecting any liability from any such non-Debtor party.

     **viii.**     **Injunction**

Except as otherwise expressly provided in the Plan, the Confirmation Order, or a separate order of the Court, all Persons who have held, hold, or may hold Claims against, or Equity Interests in, the Debtor that arose before or were held as of the Effective Date, are permanently enjoined, on and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtor or the Reorganized Debtor with respect to any such Claim or Equity Interest, or against the Non-Debtor Released Parties, (b) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Debtor or the Reorganized Debtor on account of any such Claim or Equity Interest, (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor or the Reorganized Debtor or against the property or interests in property of the Debtor or the Reorganized Debtor on account of any such Claim or Equity Interest and (d) asserting any

**right of setoff, recoupment or subrogation of any kind against any obligation due from the Debtor or the Reorganized Debtor or against the property or interests in property of the Debtor or the Reorganized Debtor on account of such Claim or Equity Interest, except to the extent such right of setoff, recoupment or subrogation is asserted with respect to an Allowed General Unsecured Claim.  Such injunction shall extend to successors of the Debtor and the Reorganized Debtor and their respective properties and interests in property.**

### ix.    Binding Effect

As of the Effective Date, the Plan shall be binding upon and inure to the benefit of the Debtor and the Reorganized Debtor, all current and former holders of Claims and Equity Interests, and their respective successors and assigns.

### x.    Setoff and Recoupment

The Reorganized Debtor will be permitted, but not required, to set off against any Claim, or the Distribution to be made under the Plan on account of such Claim, any claims of any nature whatsoever the Debtor has against the holder of such Claim.  Neither the failure to exercise any such setoff nor the allowance of any Claim under the Plan will constitute a waiver or release by the Reorganized Debtor of any such Claim the Reorganized Debtor may have against such Creditor.

### xi.    Preservation of Causes of Action

The Reorganized Debtor shall retain all rights, including all legal and equitable defenses, and all Causes of Action accruing to the Debtor and its Estate, including those arising under Chapter 5 and Section 1123(b)(3)(B) of the Bankruptcy Code.  Except as expressly provided in the Plan or the Confirmation Order, nothing in the Plan or Confirmation Order shall be or shall be deemed to be a waiver or relinquishment of any of the Debtor's or the Estate's rights or legal or equitable defenses to Claims or Causes of Action.  The Reorganized Debtor shall have, retain, reserve, and be entitled to assert all Claims, Causes of Action, rights of setoff, and other legal or equitable defenses the Debtor has as fully as if the Chapter 11 Case had not been commenced, and all of the Reorganized Debtor's legal and equitable rights respecting any Claim that are not specifically waived or relinquished by the Plan may be asserted after the Effective Date to the same extent as if the Chapter 11 Case had not been commenced, including with respect to any Claim that the Plan provides shall be paid when and as such Claim becomes due and payable in the ordinary course of the Reorganized Debtor's business.  The Causes of Action retained by the estate include, but shall not be limited to, those set forth on Exhibit C to this Disclosure Statement.

### xii.    Votes Solicited in Good Faith

As of the Confirmation Date, (a) the Debtor shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the Bankruptcy Code and applicable laws, rules, and regulations, and (b) the Debtor, the Reorganized Debtor, and the Non-Debtor Released Parties, shall be deemed to have participated in the solicitation process in good faith and in compliance with the Bankruptcy Code and applicable laws, rules, and regulations.

### xiii.    Term of Bankruptcy Injunction or Stays

All injunctions or stays provided for in the Chapter 11 Case under Sections 105 or 362 of the Bankruptcy Code and in existence on the Confirmation Date shall remain in full force and effect until the Effective Date.

### K.    Retention of Jurisdiction

Pursuant to Sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Court shall retain exclusive jurisdiction over all matters arising out of and related to the Plan, the Confirmation Order and the Chapter 11 Case for, among other things, the specified purposes set forth in Article X of the Plan.

### L.    Miscellaneous Provisions

### i.    Payment of Statutory Fees

All fees payable on or before the Effective Date pursuant to Section 1930 of Title 28 of the United States Code shall be paid by the Debtor on or before the Effective Date and all such fees payable after the Effective Date shall be paid by the Reorganized Debtor as and when such fees become due.

### ii.    Modification of the Plan

Subject to certain limitations specified in the Plan and subject to Section 1127 of the Bankruptcy Code, the Plan permits the Debtor to modify the Plan before and after confirmation.

### iii.    Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Ohio, without giving effect to the principles of conflicts of law, shall govern the rights, obligations, construction and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreements shall control).

### iv.    Withholding and Reporting Requirements

In connection with the Plan and all instruments issued in connection with the Plan and all Distributions made pursuant to the Plan, the Reorganized Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all Distributions shall be subject to any such withholding and reporting requirement.

11894150.1    21

> **v.    Waiver of Bankruptcy Rule 3020(e) and Federal Rule of Civil Procedure 62(a)**

The Debtor may request that the Confirmation Order include (a) a finding that Bankruptcy Rule 3020(e) and Rule 62(a) of the Federal Rules of Civil Procedure shall not apply to the Confirmation Order and (b) authorization for the Debtor to consummate the Plan immediately after entry of the Confirmation Order.

> **vi.    Conflict**

In the event of any inconsistency among the Plan, the Disclosure Statement, any exhibit or schedule to the Plan or Disclosure Statement, or any other instrument or document created or executed pursuant to the Plan, the provisions of the Plan govern.

> **M.    Executory Contracts and Unexpired Leases**

The Bankruptcy Code grants the Debtor the power, subject to Court approval, to assume, assign or reject executory contracts and unexpired leases.  If an executory contract or unexpired lease is rejected, the other party to the agreement may file a claim for damages, if any, incurred by reason of the rejection.  In the case of the Debtor's rejection of leases of real property and employment agreements, such damages claims are subject to certain caps imposed by the Bankruptcy Code.

> **i.    Assumption and Rejection**

All executory contracts and unexpired leases of the Debtor that are not assumed during the Chapter 11 Case and that are not either (i) rejected by the Debtor prior to the Effective Date, or (ii) subject to a motion seeking such rejection as of the Effective Date shall be deemed to have been assumed by the Debtor (subject to subsection b. of this Article) pursuant to Sections 365 and 1123 of the Bankruptcy Code without further notice or order of the Court as of the Effective Date.  Each executory contract and unexpired lease assumed pursuant to this Article shall revest in and be fully enforceable by the Reorganized Debtor in accordance with its terms, except as otherwise modified by the provisions of the Plan, or by any order of the Court.

Assumption of any executory contract or unexpired lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or non-monetary, including bankruptcy-related defaults.  Any proofs of Claim filed with respect to an executory contract or unexpired lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order or approval of the Bankruptcy Court.

> **ii.    Cure**

Any monetary amount by which any executory contract or unexpired lease to be assumed pursuant to the Plan is in default shall be satisfied, in accordance with Section 365(b)(1) of the Bankruptcy Code, by payment of such amount in Cash on the Effective Date or upon such other terms as the Debtor or the Reorganized Debtor and the non-debtor party to the executory contract or unexpired lease agree.

### iii.    Management Indemnification Rights and Insurance

Notwithstanding any contrary provision of this Plan, the obligations of the Debtor to indemnify and hold harmless all present officers against any obligations, liabilities, costs or expenses pursuant to the Debtor's governing documents, applicable law, specific agreement, or any combination of the foregoing, shall survive the Effective Date.

### iv.    Reinstatement and Continuation of Insurance Policies

Each of the Debtor's insurance policies in existence on and as of the Effective Date shall be reinstated and continued in accordance with its terms and, to the extent applicable, shall be deemed assumed by the Reorganized Debtor pursuant to Section 365 of the Bankruptcy Code.

The Debtor's discharge and release from all Claims and Equity Interests, as provided in this Plan, shall not diminish or impair the enforceability of any insurance policy that may cover Claims against the Debtor, the Reorganized Debtor, the managers, officers, or directors of the Debtor or the Reorganized Debtor, or any other person or entity.  Notwithstanding any contrary provision of this Plan or the Confirmation Order, nothing in the Plan shall impair (a) the right of any insurer to defend against any claim asserted against such insurer; (b) an insurer's status as a Creditor to the extent applicable under the Plan; (c) an insurer's right to draw on third-party letters of credit; (d) any insurer's right of setoff pursuant to Section 553 of the Bankruptcy Code; and/or (e) an insurer's right to seek arbitration of disputes between the Debtor and the insurer.

### N.    Conditions Precedent to Confirmation

The Plan shall not be confirmed by the Court unless and until the following conditions have been satisfied in full or waived:

**i.**    The Court shall have entered the Confirmation Order in form and substance acceptable to the Debtor;

**ii.**    The Confirmation Order shall:

**a.**    authorize the Debtor and the Reorganized Debtor to take all actions necessary or appropriate to enter into, implement and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan;

**b.**    decree that the provisions of the Confirmation Order and the Plan are nonseverable and mutually dependent;

**c.**    decree that the Confirmation Order supersedes any Court orders issued prior to the Confirmation Date that may be inconsistent with the Confirmation Order;

**d.**    authorize implementation of the Plan in accordance with its terms; and

**e.** provide that, pursuant to Section 1146 of the Bankruptcy Code, the assignment or surrender of any lease or sublease, and the delivery of any deed or other instrument or transfer order, in furtherance of or in connection with the plan of reorganization, including any deeds, bills of sale, or assignments executed in connection with any disposition or transfer or assets contemplated by the Plan, shall not be subject to any stamp, real estate, transfer, mortgage recording or other similar tax;

**iii.** All documents to be executed, delivered, or filed pursuant to the Plan shall be in form and substance acceptable to the Debtor.

## O.   Conditions Precedent to Effectiveness

The Plan shall not become effective unless and until it has been confirmed and the following conditions have been satisfied in full or waived:

**i.** The Confirmation Order, in form and substance acceptable to the Debtor, shall have been entered, and no stay or injunction shall be in effect precluding the consummation of the transactions contemplated by the Plan and such Confirmation Order shall not have been modified or vacated on appeal;

**ii.** All statutory fees then due and payable to the Office of the United States Trustee shall have been paid in full;

**iii.** All documents to be executed, delivered, or filed pursuant to the Plan shall be in form and substance acceptable to the Debtor, and such documents shall be executed, delivered or filed;

**iv.** All actions, authorizations, filings, consents and regulatory approvals required (if any) shall have been obtained, effected or executed in a manner acceptable to the Debtor and shall remain in full force and effect.

## P.   Waiver of Conditions

The Debtor may waive any or all of the conditions set forth in this Article at any time, without leave or order of the Court and without any formal action.

## Q.   Effect or Failure of Conditions

In the event that the Effective Date does not occur, the Debtor shall submit notice to the Court and (a) the Confirmation Order shall be vacated, (b) no Distributions shall be made, (c) the Debtor and all holders of Claims and Equity Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had not occurred, and (d) the Debtor's obligations with respect to the Claims and Equity Interests shall remain unchanged and nothing contained in the Plan shall constitute or be deemed a waiver or release of any Claims or Equity Interests by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor.

### R.        Vacatur of Confirmation Order

If (i) a Final Order denying confirmation of the Plan is entered, or (ii) the Confirmation Order is vacated and the Debtor revokes or withdraws the Plan, then the Plan shall be null and void in all respects, and nothing contained in the Plan shall (a) constitute a waiver or release of any Claims against or Equity Interests in the Debtor; (b) prejudice in any manner the rights of the holder of any Claim against or Equity Interest in the Debtor; (c) prejudice in any manner any right, remedy or claim of the Debtor or any Creditor; or (d) be deemed an admission against interest by the Debtor, any Creditor, or any party in interest in the Chapter 11 Case.

## VII.    CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

**IRS CIRCULAR 230 NOTICE REQUIREMENT: TO ENSURE COMPLIANCE WITH INTERNAL REVENUE SERVICE CIRCULAR 230, HOLDERS OF CLAIMS ARE HEREBY NOTIFIED THAT: (A) ANY DISCUSSION OF UNITED STATES FEDERAL TAX ISSUES IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE RELIED UPON, AND CANNOT BE RELIED UPON, BY HOLDERS OF CLAIMS FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON HOLDERS OF CLAIMS UNDER THE TAX CODE; (B) SUCH DISCUSSION IS INCLUDED HEREIN IN CONNECTION WITH THE PROMOTION OR MARKETING (WITHIN THE MEANING OF CIRCULAR 230) OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN; AND (C) HOLDERS OF CLAIMS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.  HOLDERS OF EQUITY INTERESTS ARE NOT BEING SOLICITED PURSUANT TO THE DISCLOSURE STATEMENT AND THEREFORE THE CONSEQUENCES OF THE PLAN FOR HOLDERS OF EQUITY INTERESTS ARE NOT ADDRESSED.**

The following discussion summarizes some of the more significant United States federal income tax consequences of the Plan to the Debtor and holders of Allowed Claims.  The analysis contained in this section is based on the Internal Revenue Code of 1986, as amended (the "Tax Code" or the "IRC"), the Treasury Regulations promulgated and proposed thereunder (the "Regulations"), and judicial decisions and published administrative rulings and pronouncements of the Internal Revenue Service (the "IRS") in effect as of the date of this Disclosure Statement.

Legislative, judicial or administrative changes or interpretations hereafter enacted or promulgated could alter or modify the analysis and conclusions set forth in this Disclosure Statement.  Any such changes or interpretations may be retroactive and could significantly affect the federal income tax consequences discussed in this Plan.  This summary does not address foreign, state or local income tax, or any estate or gift tax consequences of the Plan, nor does it purport to address the federal income tax consequences of the Plan to special classes of taxpayers (such as foreign companies, nonresident alien individuals, S corporations, banks, mutual funds, insurance companies, financial institutions, small business investment companies, regulated investment companies, broker dealers and tax-exempt organizations).  Accordingly, it should not be relied upon for purposes of determining the specific tax consequences of the Plan with respect to a particular holder of an Allowed Claim or Equity Interest.

Due to the complexity of certain aspects of the Plan, the lack of applicable legal precedent and the possibility of changes in law, the differences in the nature of various Allowed Claims, the differences in the methods of accounting of holders of Allowed Claims or Equity Interests, and the potential for disputes as to legal and factual matters, the federal income tax consequences described in this Disclosure Statement are subject to significant uncertainties.

The tax consequences to holders of Allowed Claims or Equity Interests may vary based upon the individual circumstances of each holder.  Moreover, the tax consequences of certain aspects of the Plan are uncertain.  No ruling has been applied for or obtained from the IRS with respect to any of the tax aspects of the Plan.  This discussion does not constitute tax advice or a tax opinion.  Each holder of an Allowed Claim or Equity Interest is urged to consult with its own tax advisor concerning the Plan.

### A.    Federal Income Tax Consequences to the Debtor

The Debtor is taxed as a limited liability company.  Under the Plan, it is expected that certain indebtedness of the Debtor will be cancelled in exchange for the full payment of such indebtedness.  As a result, the Debtor does not expect to recognize any cancellation of indebtedness income.

### B.    Federal Income Tax Consequences to Holders of Allowed Claims

The federal income tax consequences of the Plan to a holder of an Allowed Claim will depend on several factors, including (i) whether the holder's Allowed Claim constitutes a payment for principal or interest, (ii) the origin of the holder's Allowed Claim; (iii) the type of consideration received by the holder in exchange for the Allowed Claim; (iv) whether the holder is a resident of the United States for tax purposes (or falls into a special class of taxpayers), (v) whether the holder reports income on the accrual or cash basis method; (vi) whether the holder has taken a bad debt deduction or worthless security deduction with respect to the Allowed Claim; and (vii) whether the holder receives distributions under the Plan in more than one taxable year.  Generally, a holder of an Allowed Claim will recognize gain or loss equal to the difference between the "amount realized" by such holder and such holder's adjusted tax basis in the Allowed Claim.  The character of any recognized gain or loss in respect of an Allowed Claim will depend on the status of the holder, the nature of the Allowed Claim in its hands, the purpose and circumstances of the acquisition, the holder's holding period of the Allowed Claim, and the extent to which the holder previously claimed a deduction for the worthlessness of all or a portion of the Allowed Claim.  In addition, holders of Allowed Claims will be taxed on interest in regard to any debt instrument received by them under the Plan.

## VIII.  CONFIRMATION PROCEDURES

### A.    Confirmation Hearing

Pursuant to Section 1128 of the Bankruptcy Code, the Confirmation Hearing will be held on _____, 2010, commencing at _____ before the Honorable Tracey N. Wise, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Eastern District of Kentucky, Covington Division.  The Bankruptcy Court has directed that objections, if any, to confirmation of the Plan be served and filed so that they are received by no later than ____, 2010, at _____.

The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notices except for the announcement of the adjournment date made at the Confirmation Hearing or at any subsequent adjourned Confirmation Hearing.

**B.      Statutory Requirements for Confirmation of the Plan**

At the Confirmation Hearing, the Bankruptcy Court will confirm the Plan only if all requirements of Section 1129 of the Bankruptcy Code are met.  Among the requirements for confirmation of a plan are that the plan is (a) accepted by all impaired classes of claims and equity interests or, if rejected by an impaired class, that the plan "does not discriminate unfairly" and is "fair and equitable" as to such class, (b) feasible, and (c) in the "best interests" of creditors and stockholders that are impaired under the plan.

**C.      Best Interests of Creditors Test/ Liquidation Analysis**

Section 1129(a)(7) of the Bankruptcy Code requires that the Bankruptcy Court find that the Plan provides, with respect to each Class, that each holder of a Claim or Equity Interest in such Class either: (1) has accepted the Plan; or (2) will receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the amount that such person would receive or retain if the Debtor liquidated under Chapter 7 of the Bankruptcy Code.

The Plan provides for payment in full with interest of all Claims.  The Debtor believes, therefore, that Creditors will receive under the Plan payments of a value, as of the Effective Date, that is not less than the amount that the Creditors would receive if the Debtor liquidated under Chapter 7.

**D.      Feasibility**

Section 1129(a)(11) of the Bankruptcy Code requires the Bankruptcy Court to find that confirmation is not likely to be followed by the liquidation of the Debtor or the need for further financial reorganization.  The Debtor has analyzed the ability of the Reorganized Debtor to meet its obligations under the Plan and to retain sufficient liquidity and capital resources to conduct its business upon emergence from bankruptcy.  The Debtor believes its business will be viable post-confirmation.  The projections attached to this Disclosure Statement as Exhibit D indicate that the Reorganized Debtor should have sufficient cash flow to pay and service its debt obligations and to fund operations.

**E.      Acceptance**

Holders of Allowed Claims in Classes 2, 3, 4, and 5 are entitled to vote to accept or reject the Plan.  If a Class votes to reject the Plan, the Debtor will request that the Bankruptcy Court confirm the Plan under Section 1129(b) of the Bankruptcy Code.

**F.      Unfair Discrimination and Fair and Equitable Tests**

To obtain nonconsensual confirmation of the Plan, it must be demonstrated that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to each impaired, non-accepting class.  The Bankruptcy Code provides a non-exclusive definition of the phrase "fair

and equitable." Section 1129(b) of the Bankruptcy Code establishes "cram down" tests for secured creditors, unsecured creditors, and equity holders, as follows.

*Secured Creditors.* Either (i) each impaired secured creditor retains its liens securing its secured claim and receives on account of its secured claim deferred cash payments having a present value equal to the amount of its allowed secured claim, (ii) each impaired secured creditor realizes the "indubitable equivalent" of its allowed secured claim, or (iii) the property securing the claim is sold free and clear of liens with such liens to attach to the proceeds of the sale and the treatment of such liens on proceeds to be provided in clause (i) or (ii).

*Unsecured Creditors.* Either (i) each impaired unsecured creditor receives or retains under the plan property of a value equal to the amount of its allowed claim or (ii) the holders of claims and interests that are junior to the claims of the dissenting class will not receive any property under the plan.

*Equity Interests.* Either (i) each holder of an equity interest will receive or retain under the plan property of a value equal to the greater of the fixed liquidation preference to which such holder is entitled, or the fixed redemption price to which such holder is entitled or the value of the interest, or (ii) the holder of an interest that is junior to the nonaccepting class will not receive or retain any property under the plan.

A plan does not "discriminate unfairly" with respect to a nonaccepting class if the value of the cash and/or securities to be distributed to the nonaccepting class is equal to, or otherwise fair when compared to, the value of the distributions to other classes whose legal rights are the same as those of the nonaccepting class.

The Debtor believes that the Plan is fair and equitable and does not discriminate unfairly with respect to the holders of Allowed Claims and Interests.

## IX.   RISKS ASSOCIATED WITH THE PLAN

HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTOR SHOULD READ AND CONSIDER CAREFULLY THE FACTORS SET FORTH BELOW, AS WELL AS THE OTHER INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT (AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH AND/OR INCORPORATED BY REFERENCE THEREIN), PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN. THESE RISK FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION.

### A.    Parties in interest may object to the Plan's classification of Claims

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class. The Debtor believes that the classification of claims and interests under the Plan complies with the requirements set forth in the Bankruptcy Code. However, the Debtor cannot assure you that parties in interest and/or the Bankruptcy Court will reach the same conclusion.

**B.     The Debtor may not be able to secure confirmation of the Plan**

*Risk of Non-Confirmation of the Plan*

Although the Debtor believes that the Plan will satisfy all requirements necessary for confirmation, there can be no assurance that the Bankruptcy Court will reach the same conclusion.  Moreover, there can be no assurance that modifications to the Plan will not be required for confirmation or that such modifications would not necessitate the solicitation of votes.

*Non-consensual Confirmation*

The Bankruptcy Court may confirm the Plan at the Debtor's request if at least one Impaired Class has accepted the Plan (such acceptance being determined without including the vote of an "insider" in such Class), and as to each Impaired Class that has not accepted the Plan, if the Bankruptcy Court determines that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to the dissenting Impaired classes.  The Debtor believes that the Plan satisfies these requirements.

**C.     The Debtor may object to the amount or classification of your Claim**

The Debtor reserves the right to object to the amount or classification of any Claim.  The estimates set forth in this Disclosure Statement cannot be relied on by any creditor whose Claim is subject to an objection.  Any such Claim holder may not receive its specified share of the estimated distributions described in this Disclosure Statement.

**D.     The information in this Disclosure Statement is based on estimates, which may turn out to be incorrect.**

The information in this Disclosure Statement is based upon Claims reflected in the Schedules and a preliminary review of the Claims filed as of the date of this Disclosure Statement.  Upon the completion of a detailed analysis of the proofs of claim, the actual amount of Claims may differ from current estimates.  Further, the amounts of Disputed Claims that ultimately are allowed by the Bankruptcy Court may be significantly more or less than the estimated amounts of such Claims.  The actual aggregate amount of Allowed Claims may differ significantly from the estimates set forth in this Disclosure Statement.  Accordingly, the amount of the Distributions that ultimately will be received by a particular holder of an Allowed Claim may be adversely or favorably affected by the aggregate amount of Claims ultimately Allowed.

## X.    CONCLUSION AND RECOMMENDATIONS

The Debtor believes that confirmation and implementation of the Plan is preferable to any alternative because it will provide holders of Allowed Claims with payment in full, with interest.  The Debtor urges holders of Claims entitled to vote on the Plan to accept the Plan.

Dated: August 26, 2010                          **BUTTERMILK TOWNE CENTER, LLC**

/s/ Timothy S. Baird

By:  Timothy S. Baird

Its: Member and Manager