# EXHIBIT A

BANKRUPTCY APPELLATE PANEL FOR THE
UNITED STATES CIRCUIT COURT FOR THE SIXTH CIRCUIT

IN RE:

BUTTERMILK TOWNE CENTER, LLC,

Debtor.

Case No. 10-8046

(Chapter 11 Bankruptcy Case No. 10-21162
pending in the United States Bankruptcy Court
for the Eastern District of Kentucky)

OBJECTION OF BUTTERMILK TOWNE CENTER, LLC TO
EXPEDITED MOTION FOR STAY PENDING APPEAL PURSUANT
TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 8005

Buttermilk Towne Center, LLC, debtor and debtor in possession (the "Debtor") objects to the Expedited Motion for Stay Pending Appeal Pursuant to Federal Rule of Bankruptcy Procedure 8005 (the "Motion") filed by Bank of America, N.A. ("BOA") on August 13, 2010. BOA is unlikely to succeed on the merits of its appeal. It is adequately protected by the continuation and extension of lien in the Debtor's postpetition rents and by periodic cash payments. BOA will suffer no harm absent a stay, but a stay pending appeal would harm the Debtor and its creditors and jeopardize the Debtor's restructuring efforts. Like the Bankruptcy Court, this Court should deny BOA's Motion.

**Background**

1. The Debtor owns a commercial real estate development known as Buttermilk Towne Center in Crescent Springs, Kentucky. The Debtor commenced its bankruptcy case on April 28, 2010 ("the Petition Date") by filing a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Kentucky (the "Bankruptcy Court").

2. On the Petition Date, the Debtor requested entry of an order permitting it to use cash collateral to fund its operations and restructuring costs (Bankr. Case Doc. No. 5) (the "Cash Collateral Motion"). BOA first objected to the Cash Collateral Motion by arguing that the

Debtor had absolutely assigned its right to receive rent payments from tenants to BOA and that the rents were no longer property of the estate. Bankr. Case Doc. No. 23. The Bankruptcy Court rejected that argument and overruled BOA's objection. Bankr. Case Doc. No. 66.

3.  BOA appealed the Bankruptcy Court's order and filed an additional objection—this time arguing that the Debtor could not use cash collateral to pay professional fees. *See* Bankr. Case Doc. Nos. 93 (notice of appeal) and 64 (Second Cash Collateral Objection).[1] The Bankruptcy Court overruled BOA's objection, and its June 29, 2010 Order holding that BOA is adequately protected is the subject of this appeal. *See* Bankr. Case Doc. Nos. 116 (June 29, 2010 Order) and 199 (notice of appeal).

4.  On July 13, 2010, BOA filed a motion to stay the June 29, 2010 Order. Bankr. Case Doc. No. 121. The Debtor opposed the Motion. Bankr. Case Doc. No. 135. On August 4, 2010, the Bankruptcy Court denied BOA's motion for stay, holding that all four factors relevant to the issuance of a stay weighed against BOA. Bankr. Case Doc. Nos. 156 (Transcript of August 4 Hearing) and 150 (Order denying the Bankruptcy Stay Motion). On August 13, 2010, BOA filed the Motion in this Court.

**Argument**

5.  Rule 8005 of the Federal Rules of Bankruptcy Procedure permits a bankruptcy court to "suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest." To succeed on its Motion, BOA must demonstrate by a preponderance of the evidence that (1) it is likely to succeed on the merits of its appeal; (2) it will be irreparably injured absent the stay; (3) the issuance of a stay will not substantially injure other interested parties; and (4) the public interest will be served by granting the stay. *In re*

---

[1] Capitalized terms not otherwise defined in this Objection have the meanings set forth in the Motion.

*Player Wire Wheels, Ltd.,* 428 B.R. 767, 771 (Bankr. N.D. Ohio 2010) (citations omitted) (denying motion for stay pending appeal). The Court should balance these factors to determine whether a stay is warranted. *Id.*

6. The Debtor agrees with BOA that the standard under which this Court should analyze BOA's Motion is unclear. However, the Debtor submits that whether this Court reviews the Motion *de novo* or for clear error, the Court will arrive at the same conclusions the Bankruptcy Court reached.

### A. BOA is unlikely to succeed on the merits of its appeal.

7. BOA's analysis of adequate protection is fatally flawed. BOA advances a black-and-white approach to adequate protection, arguing that if a debtor's assets consist of real estate and rents, the debtor cannot adequately protect a secured creditor for use of its cash collateral without showing an equity cushion. Although this approach may have appeal in its simplicity, it wholly ignores the purpose of the adequate protection requirement—to ensure that a secured creditor's position is not being harmed by a Debtor's use of cash collateral. *See, e.g., In re Gallegos Research Group, Corp.,* 193 B.R. 577, 584 (Bankr. D. Colo. 1995) (stating that "[d]espite its form, the entitlement to and measure of adequate protection is always determined by the extent of the anticipated or actual decrease in the value of the secured creditor's collateral during the bankruptcy case").

8. BOA does not and cannot demonstrate that it is made worse by the Debtor's Chapter 11 case. BOA is adequately protected by the continuation and extension of its lien in the Debtor's postpetition rents and by periodic cash payments. June 29, 2010 Order, p. 7; August 4, 2010 Hearing Transcript, p. 19. Because of these protections, the amount of BOA's debt is not

11885394.1

3

materially increasing and the value of its collateral has been stabilized. Consequently, the Debtor's use of cash collateral to pay professionals does not jeopardize BOA's interests.

9. The Bankruptcy Court made factual findings based on uncontroverted evidence that the continuation and extension of BOA's existing lien protect the value of BOA's collateral during this Chapter 11 case. June 29, 2010 Order, p.7; August 4, 2010 Hearing Transcript, p. 19; *see also Gallegos Research Group*, 193 B.R. at 585 ("issues of adequate protection are questions of fact"). The Bankruptcy Court specifically stated that "there is no proof that the value of the Bank's secured claim is declining." June 29, 2010 Order, p. 6. These factual determinations are unlikely to be disturbed on appeal. *See* Fed. R. Bankr. P. 8013 (providing that findings of fact will not be disturbed on appeal absent clear error).

10. In reaching this conclusion, the Bankruptcy Court properly considered the Debtor's future net rents. *See In re Wrecclesham Grange, Inc.*, 221 B.R. 978, 981 (Bankr. M.D. Fla. 1997) (explaining that "[w]ith regard to rents, a court must look to the stream of future rents…as long as the debtor generates a sufficient income stream, the debtor's use of the rental income does not diminish the value of the collateral") (citations omitted). BOA claims that *Stearns* unequivocally held that "future net rents do not constitute adequate protection," but it ignores that *Stearns* is expressly and necessarily limited to its facts. *See In re Stearns*, 1998 WL 661071 at *5 (6th Cir. Sept. 3, 1998) ("Debtor's diversion of net rents from [lender], if permitted **under the present circumstances**, clearly would diminish [lender's] interest"). When presented with the facts of this Chapter 11 case, the Bankruptcy Court properly reached a different conclusion.

11. In addition to the continuation and extension of BOA's lien and the protection offered by the future net rents, the Debtor is making periodic cash payments to BOA. These

payments clearly distinguish the two cases cited by BOA which, in any event, are not binding on this Court and are distinguishable for other reasons. *Stearns*, 1998 WL 661071 (6th Cir. Sept. 3, 1998); *In re Union-Go Dairy Leasing, LLC,* 2010 WL 1848485 (Bankr. S.D. Ind. May 6, 2010). Just as the continuation and extension of BOA's lien ensures that the value of BOA's collateral is stabilized, these payments ensure that the amount of BOA's debt is not increasing. The combination of the continued, extended lien and the periodic payments ensures that BOA's secured claim is not harmed during this Chapter 11 case.

12.    BOA's analysis ignores the facts of this case and, as the Bankruptcy Court noted, "plays semantics with the notion of a continuation of a lien versus a replacement lien." August 4, 2010 Hearing Transcript, p. 19. Because the value of BOA's secured claim is not declining, it does not matter whether BOA is technically receiving a "replacement lien" under Section 552 of the Bankruptcy Code. It does not matter whether an equity cushion exists in this case. *See In re Elmira Litho, Inc.*, 174 B.R. 892, 905 (Bankr. S.D.N.Y. 1994) (in the context of a motion for relief from stay based on lack of adequate protection, stating that "[t]he only significance of the absence of an equity cushion is that if the collateral is *also* declining in value, it is more likely than not that the secured creditor is being injured by the continuation of the stay"). It does not matter that BOA believes that its interest in rents is entitled to "separate adequate protection." *See In re Barkley 3A Investors, Ltd.*, 175 B.R. 755, 761 (Bankr. D. Kan. 1994) (holding that lender's security interest in both real property and rents was "adequately protected by its extension to future rents and a contrary result would be improper under the equities of the case"). Because BOA cannot establish that its position is declining, BOA is not entitled to additional adequate protection.

13.     Closer analysis confirms that BOA's position is not declining during this Chapter 11 case. Because the Debtor's annual net rents are not declining and in fact are increasing, the value of the property (whatever that value is) is not declining and in fact is increasing. *Barkley 3A Investors*, 175 B.R. at 760 ("the value of the accruing rents is an integral part of the value of the real estate itself. Appraisers arrive at their values by determining what sum represents the property's annual net income potential, and then capitalizing that amount by multiplying it by a rate which represents a reasonable percentage return on investment. As a variation, they also use a discounted cash flow analysis. Under either approach, the rental income is determinative.").

14.     Had the Debtor not filed this Chapter 11 case (and, as a result, not requested authority to use cash collateral to pay professionals), BOA or a receiver appointed at its request would have collected rents during the months preceding a sale, then sold the Debtor's property and received the proceeds of the sale, and then lost any future interest in rents. If the Debtor does not successfully reorganize and this Chapter 11 case ends, BOA will be in the same position. BOA or a receiver appointed at its request will collect the rents during the months preceding a sale, then sell the Debtor's property for the same amount or higher than the sale a few months earlier and receive those proceeds, and then lose any future interest in rents. The delay in the sale simply allows BOA to collect the same or higher rents in the later months which the earlier buyer would be receiving instead of the rents BOA would have collected prior to an earlier sale. Because the annual net rents are not declining and, in fact, are increasing, the value of the property is not declining and in fact is increasing, such that BOA will receive as much or more in a sale than it would have received if the Debtor had not commenced this case.[2]

---

[2] Even in the unlikely event that BOA decides not to sell the property and instead retains ownership of the property, the undisputed evidence is that the Debtor's use of cash collateral to pay operational and restructuring expenses will delay full payment of BOA's debt for only a few months.

15.   The Bankruptcy Court properly concluded that the continuation and extension of BOA's lien to postpetition rents and the Debtor's periodic cash payments adequately protect BOA. BOA cannot establish that the Bankruptcy Court's factual findings and legal conclusions based on those findings are erroneous. It is unlikely to succeed on the merits of its appeal.

### B.   BOA will not be irreparably injured absent a stay pending appeal.

16.   Likewise, BOA does not and cannot establish that it will be irreparably injured absent a stay. In determining whether a party will be irreparably injured absent a stay, "the key work is *irreparable*. Mere injuries, however substantial…are not enough. The possibility that adequate compensatory or other corrective relief will be available…weighs heavily against a claim of irreparable harm." *In re Webb Mtn, LLC*, 2007 WL 4126016 at *4 (Bankr. E.D. Tenn. Nov. 20, 2007) (Bankr. E.D. Tenn. Nov 20, 2007) (quoting *Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991)). Under this standard, BOA will not suffer irreparable harm.

17.   Indeed, the Bankruptcy Court specifically held that BOA will not be harmed by the Debtor's use of cash collateral to pay professional fees and that BOA is protected from any harm. The irreparable harm analysis is, in many respects, identical to the adequate protection analysis. For the same reasons that the Court properly concluded that BOA is adequately protected, BOA will not be irreparably harmed absent a stay pending appeal.

18.   Additionally, as the Bankruptcy Court pointed out in its August 4, 2010 ruling, professional fees will be granted only on an interim basis during the case and will be subject to a final determination. August 4, 2010 Hearing Transcript, p. 20 ("I would also note that as to the irreparable injury factor and the argument concerning the payment of fees, no matter what any future ruling may be on fees, that all fee rulings, as the parties are aware, are interim rulings on

fees until a final fee application"). The Bankruptcy Court's power and obligation to review fees on a final basis ensures that BOA will not be irreparably harmed absent a stay.

### C. A stay will substantially injure other parties in interest.

19. Notwithstanding the obstacles imposed by BOA's numerous objections, motions, and appeals, the Debtor is moving forward to prepare a plan of reorganization that provides for payment of all of the Debtor's creditors, including BOA, in full with interest. In order to present this plan to the Bankruptcy Court and to creditors, the Debtor must pay reasonable, necessary restructuring costs. *See* August 4, 2010 Hearing Transcript, p. 19 ("The irreparable injury and harm to other parties clearly tip in favor of the reorganization process continuing and the costs of same being funded during the plan formulation period").

### D. A stay would not serve the public interest.

20. Contrary to BOA's assertions, there is no "tremendous policy interest" for real estate lenders at stake in this Chapter 11 case. The adequate protection analysis is inherently case-specific, and the Bankruptcy Court's decision is limited to the facts of this particular case. *See* August 4, 2010 Hearing Transcript, p. 20 ("the Court finds that the public interest is not implicated by the continuation of the stay, notwithstanding Bank of America's arguments, because as previously noted the issue of adequate protection is factually driven on a case-by-case basis"). Like the other three factors, this factor does not support BOA's Motion.

### Conclusion

21. Each of the four factors relevant to a stay pending appeal weighs against granting BOA's Motion. This Court's Order is likely to be upheld on appeal. BOA will not be irreparably harmed absent a stay. A stay would, however, jeopardize the Debtor's prospects for

11885394.1                                    8

a successful reorganization to the detriment of the Debtor, its estate, its creditors, and its equity holders. The Motion should be denied.

Dated: August 20, 2010

Respectfully submitted,

/s/ Paige Leigh Ellerman
Timothy J. Hurley (OH 0006458)
Paige Leigh Ellerman (KY 99172)
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
Telephone: (513) 381-2838
Facsimile: (513) 381-0205
  -and-
1717 Dixie Highway, Suite 910
Covington, Kentucky 41011
Telephone: (859) 331-2838
hurley@taftlaw.com
ellerman@taftlaw.com

**ATTORNEYS FOR THE DEBTOR**

**CERTIFICATE OF SERVICE**

I certify that a true copy of the foregoing Objection was served on August 20, 2010 electronically via ECF notification on the following:

Timothy P. Palmer
Christopher P Schueller
*Counsel for Bank of America, N.A.*

/s/ Paige Leigh Ellerman

11885394.1

9