**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | : | Case No. 10-21162 |
| | : | |
| **BUTTERMILK TOWNE CENTER, LLC,** | : | Chapter 11 |
| | : | |
| **Debtor** | : | Honorable Judge Wise |
| | : | |

**NOTICE OF AUCTION AND HEARING IN CONNECTION
WITH SALE OF SUBSTANTIALLY ALL OF DEBTOR'S ASSETS**

  **Please take notice** than on September 2, 2011, Buttermilk Towne Center, LLC, debtor and debtor in possession (the "Debtor"), filed a motion seeking the entry of an order approving the Debtor's proposed process for the sale of substantially all of its assets and the assumption and assignment of certain unexpired leases and executory contracts (Doc. No. 345) (the "Motion"). Capitalized terms not otherwise defined in this Notice have the meanings set forth in the Motion. By order dated September 22, 2011, the Bankruptcy Court approved the Debtor's Bid Procedures (the "Bid Procedures Order").

  **Please take further notice** that all interested parties are invited to become Qualified Bidders. The deadline to submit bids is October 14, 2011 at 5:00 p.m. (EST) (the "Bid Deadline"). Bids and all Qualified Bid Documents should be submitted to counsel to the Debtor (Taft Stettinius & Hollister, LLP, Attn: Timothy J. Hurley, 425 Walnut Street, Suite 1800, Cincinnati, OH 45202; hurley@taftlaw.com) and counsel to the Bondholder (Buchanan Ingersoll & Rooney PC, Attn: Timothy P. Palmer, One Oxford Centre, 301 Grant Street, 20th Floor, Pittsburgh, PA 15219; timothy.palmer@bipc.com), with a copy to Ben Wineman (bwineman@midamericagrp.com).

  **Please take further notice** that parties submitting Qualified Bids should wire the Transaction Deposit to Lawyers Title of Cincinnati, Inc., Attn: Richard Herndon pursuant to the attached escrow agreement using the following wire instructions:

Name of Bank:  PNC Bank
ABA of Bank: 041000124
Name on Account: Lawyers Title of Cincinnati, Inc.
Account Number:  4011308869

  **Please take further notice** that the Debtor shall conduct an Auction at the offices of Taft Stettinius & Hollister LLP, 425 Walnut Street, Suite 1800, Cincinnati, Ohio 45202 at 10:00 a.m. (EST) on October 17, 2011 (the "Auction Date"). The Auction Date may be extended by the Debtor and the Bondholder.

12401843.1

**Please take further notice** that the hearing to approve the Transaction (the "Sale Hearing") shall be held on October 26, 2011, or such date thereafter as scheduled by the Bankruptcy Court, in the United States Bankruptcy Court for the Eastern District of Kentucky, 100 East Vine St., Lexington, Kentucky 40507 at 10:00 a.m.

**Please take further notice** that objections, if any, to the Transaction must (a) be in writing; (b) state with specificity the nature of the objection; and (c) by October 24, 2011 at 12:00 p.m. (EST) (the "Objection Deadline") be filed with the Court and served on counsel to the Debtor (Taft Stettinius & Hollister, LLP, Attn: Timothy J. Hurley, 425 Walnut Street, Suite 1800, Cincinnati, OH 45202), counsel to the Bondholder (Buchanan Ingersoll & Rooney PC, Attn: Timothy P. Palmer, One Oxford Centre, 301 Grant Street, 20th Floor, Pittsburgh, PA 15219), and counsel to the United States Trustee (Office of the United States Trustee, Attn: Philip Hanrahan, 100 E. Vine Street, Suite 500, Lexington, KY 40507).

Dated: October 12, 2011

Respectfully submitted by:

**TAFT STETTINIUS & HOLLISTER LLP**

By: /s/ Timothy J. Hurley
Timothy J. Hurley (*Pro Hac Vice*)
Beth A. Silvers (KY 92202)
425 Walnut Street, Suite 1800
Cincinnati, OH 45202
(513) 381-2838 (Telephone)
(513) 381-0205 (Facsimile)
and
1717 Dixie Highway, Suite 910
Covington, KY 41011-4704
(859) 331-2838
hurley@taftlaw.com
silvers@taftlaw.com
**ATTORNEYS FOR DEBTOR
AND DEBTOR-IN-POSSESSION**

12401843.1

ESCROW AGREEMENT

THIS ESCROW AGREEMENT (this "Escrow Agreement") made as of October ___, 2011, by and among LAWYERS TITLE OF CINCINNATI, INC, 3500 Red Bank Road, Cincinnati, Ohio 45227, Attn: Richard D. Herndon, Esq. ("Escrow Agent"), _____ ("Purchaser"), BUTTERMILK TOWNE CENTER LLC ("BTC"), and BANK OF AMERICA, N.A. ("Bondholder"), with respect to the following:

A.  BTC owns certain assets known as the Buttermilk Towne Center, located in the City of Crescent Springs, Kenton County, Kentucky, such assets being more particularly described in the Contract (as defined below) and defined in the Contract as "Purchased Assets."

B.  BTC is conducting an auction to sell the Purchased Assets and Purchaser desires to be a Qualified Bidder (as defined in the Bid Procedures) in such Auction.

C.  In accordance with certain bid procedures approved by the United States Bankruptcy Court, Eastern District of Kentucky, Covington Division (the "Bankruptcy Court") in Case No. 10-21162 as set forth in the Order Approving Bid Procedures, Notice of Sale, and Notice of Assumption and Assignment of Executory Contracts and Unexpired Leases (a copy of such bid procedures being attached hereto as **Exhibit A**, the "Bid Procedures"), to be a Qualified Bidder, Purchaser has executed an Asset Purchase Agreement, a copy of which is attached hereto as **Exhibit B** (as may be revised during the bidding process, the "Contract"), and is required (among other things) to deliver the following to Escrow Agent a good faith deposit ("Good Faith Deposit") in the amount of Two Hundred Fifty Thousand Dollars ($250,000.00).

D.  If Purchaser is the Successful Bidder, prior to the Bankruptcy Court's entry of a final, non-appealable sale order approving the sale of the Purchased Assets to Purchaser in accordance with the terms of the Contract, Purchaser shall deliver to Escrow Agent additional funds ("Additional Deposit") in an amount sufficient to increase the Good Faith Deposit to 10% of the Cash Purchase Price (as defined in the Contract) as required by the Bid Procedures.

E.  Escrow Agent shall hold the Good Faith Deposit and any Additional Deposit and the Contract in escrow in accordance with the terms and conditions contained herein.

NOW, THEREFORE, in consideration of the premises and mutual promises and covenants set forth herein:

1. <u>Deposit of Funds</u>.  Upon execution of this Agreement by all parties, Purchaser will deposit with Escrow Agent the Good Faith Deposit and upon the terms and conditions contained in the Contract may deposit with Escrow Agent the Additional Deposit (collectively, the "Deposit"), and Escrow Agent agrees to receive and hold the Deposit in a non-interest bearing account.  Purchaser hereby certifies that it is aware that the Federal Deposit Insurance Corporation (FDIC) coverages apply only to the cumulative maximum amount of $100,000.00 for each individual depositor for all of depositor's accounts at the same or related institution. Purchaser further understands that certain banking instruments such as, but not limited to,

12401843.1

repurchase agreements and letters of credit are not covered at all by FDIC insurance. Escrow Agent assumes no responsibility for, nor will it be liable, for any loss occurring which arises from the fact that the amount of the above account may cause the aggregate amount of any individual depositor's accounts to exceed $100,000.00 and that the excess amount is not insured by the Federal Deposit Insurance Corporation or that FDIC insurance is not available on certain types of bank instruments.

2. <u>Disbursement of Funds</u>.  The Escrow Agent shall deliver the Deposit to Bondholder or to Purchaser, as the case may be, under the following conditions:

(a) To Purchaser if Purchaser's bid is not the Successful Bid or the Runner-Up Bid (as defined in the Bid Procedures) and Purchaser is not the Successful Bidder or the Runner-Up Bidder (as defined in the Bid Procedures);

(b) To Purchaser if Purchaser's bid is the Runner-Up Bid (as defined in the Bid Procedures) and the sale of the Purchased Assets to the Successful Bidder has closed.

(c) If Purchaser's bid is the Successful Bid and Purchaser is the Successful Bidder, or the Purchaser's bid is the Runner-Up Bid and the Successful Bid has failed to close, to:

(1) Bondholder on the Closing Date (as defined in the Contract), provided, Closing shall occur pursuant to the Contract; or

(2) Bondholder upon receipt of written demand therefore ("**Bondholder's Demand for Funds**") stating that Purchaser has defaulted in the performance of Purchaser's obligation to close under the Contract and the facts and circumstances underlying such default; provided, however, that the Escrow Agent shall not honor such demand until more than ten (10) days after the Escrow Agent shall have sent a copy of such demand to Purchaser in accordance with the provisions of Section 3 of this Escrow Agreement, nor thereafter if the Escrow Agent shall have received a Notice of Objection (as defined in Section 3 of this Escrow Agreement) from Purchaser within such ten (10) day period; or

(3) To Purchaser upon receipt of written demand therefore ("**Purchaser's Demand for Funds**") stating that the Contract has been terminated in accordance with the provisions thereof, or that BTC has defaulted in the performance of any of BTC's obligations under the Contract, and the facts and circumstances underlying the same; provided, however, that the Escrow Agent shall not honor such demand until more than ten (10) days after the Escrow Agent shall have sent a copy of such demand to BTC in accordance with the provisions of Section 3 of this Escrow Agreement nor thereafter, if the Escrow Agent shall have received a Notice of Objection from BTC within such ten (10) day period.

12401843.1

3. Demand for Funds.

(a) Within two (2) business days of the receipt by the Escrow Agent of Bondholder's Demand for Funds or a Purchaser's Demand for Funds, the Escrow Agent shall send a copy thereof to the other party by overnight mail via a recognized courier service such as Federal Express, with a signature required for delivery, and otherwise as provided in the Contract. The other party shall have the right to object to the delivery of the Deposit by sending written notice (the "**Notice of Objection**") of such objection to the Escrow Agent by overnight mail via a recognized courier service such as Federal Express, with a signature required for delivery, and otherwise as provided in the Contract which Notice of Objection shall be deemed null and void and ineffective if such Notice of Objection is not received by the Escrow Agent within the time periods prescribed above. Such notice shall set forth the basis for objecting to the delivery of the Deposit. Upon receipt of a Notice of Objection, the Escrow Agent shall promptly send a copy thereto to the party who sent the written demand for the Deposit.

(b) In the event the Escrow Agent shall have received the Notice of Objection within the time periods prescribed above, the Escrow Agent shall continue to hold the Deposit until (i) the Escrow Agent receives written notice from Bondholder and Purchaser directing the disbursement of the Deposit, in which case the Escrow Agent shall then disburse the Deposit in accordance with such direction, or (ii) in the event of litigation between or among Bondholder, BTC and Purchaser, the Escrow Agent shall deliver the Deposit to the clerk of the Bankruptcy Court, or (iii) the Escrow Agent takes such affirmative steps as the Escrow Agent may, at the Escrow Agent's option, elect in order to terminate the Escrow Agent's duties including, but not limited to, depositing the Deposit in the Bankruptcy Court and bring an action for interpleader, the costs thereof to be borne by whichever of BTC or Purchaser is the losing party.

(c) The Bankruptcy Court shall have exclusive jurisdiction over any dispute over entitlement to the Deposit.

4. Liability. The parties agree that Escrow Agent shall have no liability under this Escrow Agreement except to account for the Deposit as specified herein. Without limiting the generality of the foregoing, Escrow Agent shall not be liable for any loss or damage resulting from any of the following: (a) any defects or conditions of title to any property, except those resulting from Escrow Agent's own wrongful acts; (b) any defects in the property purchased, obligations or rights of any tenant or other party in possession, the surrender of possession or any misrepresentations made by any other party; (c) legal effect of any instrument exchanged by the parties hereto; (d) any default, error, action or omission of any other party; (e) the expiration of any time limit or other delay, unless such time limit was known to Escrow Agent, Escrow Agent was obligated to comply therewith, and such loss is solely caused by failure of Escrow Agent to proceed in its ordinary course of business; (f) any good faith act or forbearance by Escrow Agent; (g) any loss or impairment of the Deposit deposited in escrow in the course of collection or while on deposit with a trust company, bank, savings bank or savings association resulting from failure, insolvency or suspension of such institution or while in transit by wire transfer or otherwise; (h) Escrow Agent complying with any and all legal process, writs, orders, judgments and decrees of any court, whether issued with or without jurisdiction, and whether or not subsequently vacated, modified, set aside or reversed; (i) Escrow Agent asserting or failing to

12401843.1

assert any cause of action or defense in any judicial, administrative, or other proceeding either in the interest of itself or any other party or parties. Upon disbursement of all of the Deposit, Escrow Agent shall be relieved of all further liability and responsibility in connection with the Escrow Agreement or this escrow.

5. Time Limit. In the event that the Escrow Agent has not been given written instructions to disburse the Deposit on or before one hundred (100) days after the Effective Date under the Contract, then the Escrow Agent shall make inquiry of each party's legal counsel as to the disposition of the Deposit. Unless disposition of the Deposit is agreed upon in writing at that time, Escrow Agent may be entitled to either interplead the Deposit as described in Section 9 herein or continue to hold the Deposit to wait for written instructions from Purchaser and Bondholder, which choice is at Escrow Agent's sole and absolute discretion.

6. Methods of Funds Transfer. Escrow Agent may transfer the Deposit by wire transfer of immediately available funds.

7. Release. The parties agree that Escrow Agent shall have no liability under this Escrow Agreement except to account for the Deposit as provided herein, the endorsement, acceptance, or negotiation of such funds shall constitute a full and complete release by such party of the Escrow Agent from any and all liability of any kind or nature whatsoever in connection with this Escrow Agreement or the escrow. In furtherance, and not in limitation of the foregoing, Purchaser, Bondholder and BTC agree as follows, which agreement shall survive the disbursement of all of the Deposit in the escrow account: (i) none of Purchaser, Bondholder or BTC shall hold Escrow Agent responsible in any manner for any liability arising out of, or in connection with Escrow Agent's acceptance of or Escrow Agent's performance of its duties hereunder; and (ii) none of Purchaser, Bondholder or BTC shall hold Escrow Agent liable for any error in judgment or for any act done or omitted by Escrow Agent in good faith or for any mistake in fact or law or for anything which Escrow Agent does or refrains from doing in connection with this Escrow Agreement.

8. Termination of Liability. Upon disbursement of all of the Deposit and delivery of the Contract, Escrow Agent shall be relieved of all further liability and responsibility in connection with this Escrow Agreement or this escrow.

9. Interpleader. In the event any demand is made upon Escrow Agent concerning this Escrow Agreement or this Escrow, or at any time, for any cause, or for no cause, Escrow Agent, at its election and in its sole discretion, may cause the Deposit to be delivered to the Bankruptcy Court to determine the rights of BTC, Bondholder and Purchaser, or to interplead BTC, Bondholder and Purchaser by an action brought in the Bankruptcy Court. Deposit by Escrow Agent of the Deposit into the Bankruptcy Court shall relieve Escrow Agent of all further liability and responsibility in connection with this Escrow Agreement and the Escrow.

10. Counterparts and Faxes. This Escrow Agreement may be executed in counterparts and shall be binding on the parties notwithstanding that all parties have not signed the same counterpart. In addition, a faxed copy of an executed counterpart (with originals to be sent to the Escrow Agent by ordinary mail) shall be binding on all parties.

12401843.1

      The parties hereto have caused this Escrow Agreement to be executed through their authorized representatives as of the date first above written.

| **ESCROW AGENT:** | **PURCHASER:** |
|---|---|
| LAWYERS TITLE OF CINCINNATI, INC. | _____ |
| | |
| By: _____ | By: _____ |
| Name:_____ | Name:_____ |
| Title:_____ | Title:_____ |
| **BTC:** | **BONDHOLDER:** |
| BUTTERMILK TOWNE CENTER LLC | BANK OF AMERICA, N.A. |
| | |
| By: _____ | By: _____ |
| Name:_____ | Name:_____ |
| Title:_____ | Title:_____ |

## **EXHIBIT A**

## **Copy of Bid Procedures Attached**

12401843.1

## EXHIBIT B

**Copy of Asset Purchase Agreement**

**[to be provided by bidders]**

12401843.1