UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION

| | | |
|---|---|---|
| IN RE: | : | Case No. 10-21162 |
| | : | |
| **BUTTERMILK TOWNE CENTER, LLC,** | : | Chapter 11 |
| | : | |
| **Debtor.** | : | Honorable Judge Wise |
| | : | |

**ORDER PURSUANT TO 11 U.S.C. §§ 105, 363, 365 AND 1107 AND BANKRUPTCY RULES 2002, 6004 AND 6006 (A) APPROVING APA; AND (B) AUTHORIZING (I) THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES AND (II) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

This matter is before the Court on the motion of Buttermilk Towne Center, LLC, debtor and debtor in possession (the "Debtor"), pursuant to Bankruptcy Code Sections 105, 363 and 365 and Bankruptcy Rules 2002, 6004 and 6006, for the entry of an order (a) approving the APA and (b) authorizing (i) the sale of substantially all of the Debtor's assets as further identified in the APA (the "Purchased Assets"), free and clear of liens, claims, encumbrances and interests and (ii) the assumption and assignment of certain executory contracts and unexpired leases (the "Motion").[1]  Capitalized terms not otherwise defined in this Order have the meanings set forth in the Motion.  The Court has reviewed the record in this case, the Motion and the objections to the Motion.  The Court heard the arguments of counsel at a hearing held on October 26, 2011 (the "Hearing") and it appearing that the relief requested in the Motion is in the best interests of the

---

[1] The Motion also sought approval of the Debtor's proposed Bid Procedures, which the Court granted by separate order dated September 22, 2011 (the "Bid Procedures Order") (Doc. No. 357).

12319084.2

Debtor, its creditors and all other interested parties; and after due deliberation thereon, and good cause appearing therefore,

**THE COURT HEREBY FINDS THAT:**

    A.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue of the Debtor's case and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (N) and (O).

    B.    Notice of the Hearing and the Motion has been served on all creditors and parties in interest.  Such notice is appropriate, adequate and sufficient for all purposes as required by the Bankruptcy Code, Bankruptcy Rules and the Local Rules of this Court.  No other or further notice is required.

    C.    The Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code on April 28, 2010 and continues to operate its business and manage its properties as debtor in possession.  No trustee or examiner has been appointed in this Chapter 11 case, and no creditors' committee or other official committee has been appointed.

    D.    The Debtor is the owner and operator of a commercial real estate development (the "Project"), known as Buttermilk Towne Center, located in Crescent Springs, Kenton County, Kentucky.

    E.    The City of Crescent Springs, Kentucky (the "City") is the fee owner of the real estate (the "Land") upon which the Project's improvements are constructed.

    F.  The City issued Taxable Industrial Building Revenue Bonds, Series 2007 (the "<u>Bonds</u>") to finance the acquisition of the Land and the construction of the Project

    G.  Pursuant to an Amended and Restated Agreement of Lease (the "<u>Lease</u>") dated as of December 1, 2007 between the City and Debtor, amending and restating an Agreement of Lease dated as of August 1, 2004, the City leased the Land to the Debtor. The Lease has a 25 year term, coterminous with the term of the Bonds, expiring December 31, 2032.

    H.  The City and Bear Creek Capital, LLC are parties to a Development Agreement dated May 4, 2004 related to the Project, the Land and the development of the Land.

    I.  Provided that the Bonds remain outstanding, the leasehold interest in the Land and the Project is exempt from City, Kenton County School District (the "<u>School District</u>"), and Kenton County Public Library (the "<u>Library</u>") real estate ad valorem taxes pursuant to Kentucky law (the "<u>Tax Exemptions</u>").

    J.  Simultaneously with the issuance of the Bonds by the City for the benefit of the Debtor, the Debtor agreed to make annual PILOT payments (payments in lieu of taxes) for the term of the Bonds to (i) the City and School District, pursuant to that certain Agreement in Lieu of Taxes dated November 19, 2007 by and among BTC, the City, and the School District, and (ii) the Library, pursuant to that certain Agreement in Lieu of Taxes dated December 17, 2007 by and between the Debtor and the Library (collectively, the "<u>PILOT Agreements</u>"). The Tax Exemptions and the PILOT

Agreements at their current assessment levels are collectively referred to in this Order as the "Tax Abatement."

K.  The Debtor aggressively marketed the Purchased Assets and such marketing efforts provided a fair and reasonable opportunity for interested parties to participate in the sale process. All parties who executed a Confidentiality Agreement or otherwise expressed any interest in acquiring the Purchased Assets received adequate opportunity to submit a competing bid. The selection of the Prevailing Bidder was made after solicitation of higher and better offers pursuant to the Bid Procedures Order.

L.  The Prevailing Bidder for the sale of the Purchased Assets and the Bonds, as set forth in the APA is Visconsi Buttermilk Ltd. (the "Purchaser"). A true copy of the APA is attached to the Order as Exhibit A. The APA provides for the sale of the Purchased Assets and Bonds, the maintenance of the Tax Abatement, and the Debtor's assumption and assignment of the Assumed Contracts and Leases identified in the APA (collectively, the "Transaction").

M.  The Back-Up Bidder for the sale of the Purchased Assets and the Bonds is Midland-Olympus Value Added Fund, LLC (the "Back-Up Purchaser").

N.  The objection periods set forth in the Motion and the Bid Procedure Order afforded a full, fair and reasonable opportunity to any entity to make a higher or better offer or contest the validity of the offer by the Purchaser as the highest and best offer for the Purchased Assets.

O.  The Sale of the Purchased Assets to Purchaser, pursuant to Sections 105(a), 363(b) and 363(f) of the Bankruptcy Code, is free and clear of all liens, claims, encumbrances or interests held by any third parties in any of the Purchased Assets

and those liens, claims, encumbrances, or interests shall attach to the proceeds of the Transaction in the same order and with the same priority as they currently are held, subject to the provisions for distributions of certain Transaction proceeds described in this Order.

P.  The terms of the APA are fair and reasonable under the circumstances of this case and represent the highest and best offer for the Purchased Assets. The consideration for the Purchased Assets set forth in the APA constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and applicable state and federal law. The Purchaser has acted in good faith at all times and in all respects relating to the Sale of the Purchased Assets and Bonds pursuant to the APA, which was negotiated and entered into by the parties in good faith and from arm's length bargaining positions. The Purchaser is therefore a good faith purchaser within the meaning of 11 U.S.C. § 363(m) and is entitled to the protection of that provision.

Q.  The Debtor presented a sound business justification for the sale of the Purchased Assets to the Purchaser free and clear of all claims, liens, encumbrances, liabilities, and interests pursuant to the APA. It is a reasonable exercise of the Debtor's business judgment and in the best interests of the Debtor and its estate to consummate the sale of the Purchased Assets to Purchaser and to execute, deliver, and perform its obligations under the APA.

R.  Maintaining the Tax Abatement is integral to the Transaction. The Purchaser shall obtain the benefit of the Tax Abatement pursuant to the APA and the assignments to the Purchaser under the APA.

S. The Assumed Contracts and Leases are integral to the Transaction. The Debtor has demonstrated that it is an exercise of sound business judgment to assume and assign the Assumed Contracts and Leases to the Purchaser. Such assumption and assignment of the Assumed Contracts and Leases is in the best interests of the Debtor, the estate, and the Debtor's creditors. The Debtor has cured, caused to be cured, or provided or caused to be provided adequate assurance of cure of any default under any of the Assumed Contracts and Leases within the meaning of Section 365(b)(1)(A) of the Bankruptcy Code. The Purchaser has provided adequate assurance of its future performance of and under the Assumed Contracts and Leases within the meaning of Section 365(b)(1)(C) of the Bankruptcy Code. The Debtor's assumption and assignment of the Assumed Contracts and Leases fully complies with Section 365 of the Bankruptcy Code. Further, there are no defaults, breaches or events of default in relation to the Assumed Contracts and Leases and same are in full force and effect in accordance with the terms of each such respective contract or lease.

T. The Transaction is in the best interests of the Debtor's estate. Accordingly, good cause has been shown for the entry of this Order.

U. The Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set for the herein.

**WHEREFORE IT IS ORDERED AND ADJUDGED:**

1. The Motion shall be and hereby is, GRANTED.

2. All objections to the Motion or the relief requested in the Motion, if any, that have not been withdrawn, waived or settled, and all reservation of rights in such

objections, if any, shall be and hereby are, OVERRULED in all respects on the merits and denied.

3. The Transaction shall be and hereby is approved in its entirety. The terms of the APA are incorporated by reference as if fully set forth in this Order.

4. This Order shall bind in all respects all parties in interest, including the Debtor, the Debtor's creditors and interest-holders, whether known or unknown, any holders of liens, claims, encumbrances or interests in or against the Purchased Assets, all non-Debtor parties to any leases or executory contracts assumed and assigned to the Purchaser or rejected by the Debtor, the Purchaser, the Bondholder, the Indenture Trustee, the City, the School District, the Library, any future trustees of the Debtor's estate under either Chapter 11 or Chapter 7 of the Bankruptcy Code, all parties in interest, and the successors and assigns of the foregoing parties (collectively, the "Parties in Interest").

5. Any and all Parties in Interest, persons and entities are forever prohibited and enjoined from commencing and continuing in any manner any action or other proceeding, whether in law or equity, in any judicial administrative, arbitral or other proceeding against the Purchaser, its successors or assigns in relation to the Purchased Assets with respect to any liens, interests or encumbrances arising under, out of, or in connection with or in any way relating to the Debtor, the Purchaser and the Purchased Assets.

6. The Debtor has full power and authority to execute and deliver (i) the APA; and (ii) all documents required under the APA to transfer the Purchased Assets to Purchaser, including documents required to maintain the Tax Abatement, free and clear

of all liens, claims, and encumbrances. No further orders, consents, or approvals are required for the Debtor to consummate the Transaction.

7. The Debtor and all Parties in Interest shall and hereby are directed to take all actions reasonably necessary to effectuate the Transaction, including the execution of deeds, bills of sales, assignments, and any documents required to maintain the Tax Abatement. The Parties in Interest shall be and hereby are prohibited and enjoined from taking any action that would impair or alter the Tax Abatement.

8. Pursuant to Sections 105 and 363 of the Bankruptcy Code, the Purchased Assets shall be sold, conveyed, granted, assigned, transferred, and delivered by the Debtor to the Purchaser or its designee to take title to and/or possession of any of the Purchased Assets under the APA free and clear of any and all encumbrances, claims, liens, mortgages, security or other interests, restrictions, prior assignments, obligations, pledges, charges and liabilities against the Debtor or the Purchased Assets.

9. Copies of this Order may be filed or recorded as appropriate to cancel any liens or claims of record against the Purchased Assets. This Order shall bind all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental units and departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law or their duties of their office, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure and title.

10. The Debtor's assumption and assignment of the Assumed Contracts and

Leases on the terms set forth in the APA shall be and hereby is approved and no further orders, consents, or approvals are required for the Debtor to assume and assign to the Purchaser the Assumed Contracts and Leases.  The requirements of Section 365 of the Bankruptcy Code with respect to the Debtor's assumption and assignment of the Assumed Contracts and Leases shall be and hereby are deemed satisfied.

11. The Purchaser shall be and hereby is supplanted in place of the Debtor in each and every Assumed Contract and Lease for all purposes with such Assumed Contracts and Leases being in full force and effect.  Non-Debtor parties to the Assumed Contracts and Leases shall be and hereby are estopped and enjoined from alleging any defects, breaches, events of default or any other matters which could or would give rise to cause for noncompliance with their respective obligations under such Assumed Contracts and Leases occurring prior to the date of this Order.  The Purchaser shall be and hereby is, authorized to enforce all obligations of non-Debtor parties under the Assumed Contracts and Leases.

12. Notwithstanding anything to the contrary in this Order, the Lease Agreement dated April 14, 2004 between the Debtor and Remke Markets, Inc. ("Remke") and all amendments thereto (the "Remke Lease") shall be and hereby are assumed by the Debtor and assigned to the Purchaser subject to any and all rights and claims of Remke thereunder, if any, including those rights and claims set forth in the Objection of Remke Markets, Inc. to Cure Amounts as Set Forth in Schedule 6.2(i) of Asset Purchase Agreement filed on October 21, 2011 (Doc. No. 368).  All such rights and claims of Remke, all defenses of the Debtor and the Purchaser with respect to such rights and claims, and all rights and claims of the Debtor and the Purchaser, as assignee,

12319084.2

under the Remke Lease shall be and hereby are fully reserved.

13. The Purchaser is not a mere continuation of the Debtor nor does the Purchaser constitute a successor to the Debtor for any purposes. The Purchaser is not and shall not be deemed to be expressly or impliedly agreeing to assume any of the Debtor's liabilities, leases, or contracts, except as specifically set forth in the APA. The Purchaser shall have no successor or vicarious liabilities of any kind resulting from the Transaction. The Transaction does not constitute a merger or de facto merger of the Debtor and the Purchaser.

14. At the closing on the Transaction, the Debtor is authorized and directed to pay the proceeds of the Transaction directly to the Bondholder without further Court order.

15. The Bondholder is authorized and directed to pay the Broker from the proceeds of the Transaction amounts owed under the Order Granting Application to Employ Broker entered on May 12, 2011 (Doc. No. 310).

16. The automatic stay provisions of Section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to implement the terms and conditions of the APA and the provisions of this Order.

17. The 14-day stay imposed by Bankruptcy Rules 4001(a)(3), 6004(h) and 6006(d) as to the effectiveness of this Order shall be and hereby is waived. This Order shall be effective immediately upon entry and the Debtor is authorized to close the Transaction immediately upon entry of this Order and in accordance with the APA.

18. The APA and any related agreements, documents or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance

with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtor's estate.

19.     This Order constitutes a final and appealable order within the meaning of 28 U.S.C. §158(a).

20.     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this matter by Bankruptcy Rule 9014.  To the extent that any of the findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the conclusions of law constitute findings of fact, they are adopted as such.

21.     In the event that the Purchaser fails to close on the Transaction in accordance with the APA, the Debtor, upon consultation with the Bondholder, is authorized to consummate the Transaction with the Back-Up Bidder in accordance with the terms of the asset purchase agreement entered into with the Back-Up Bidder.  In such event, all references to the Purchaser in this Order shall mean the Back-Up Bidder and all references to the APA shall mean the asset purchase agreement negotiated and agreed to with the Back-Up Bidder.  The Back-Up Bidder shall be entitled to all of the same rights, benefits, and protections under this Order as though it is the Purchaser.

22.     This Court shall retain jurisdiction over all matters arising from or related to the interpretation and/or implementation to this Order.

| Tendered by: | Seen and Agreed: |
|---|---|
| **TAFT STETTINIUS & HOLLISTER LLP** | **BUCHANAN INGERSOLL & ROONEY PC** |

By: /s/ Timothy J. Hurley
Timothy J. Hurley (*Pro Hac Vice*)
Beth A. Silvers (KY 92202)
425 Walnut Street, Suite 1800
Cincinnati, OH  45202
(513) 381-2838 (Telephone)
(513) 381-0205 (Facsimile)
and
1717 Dixie Highway, Suite 910
Covington, KY  41011-4704
(859) 331-2838
hurley@taftlaw.com
silvers@taftlaw.com
**ATTORNEYS FOR DEBTOR
AND DEBTOR-IN-POSSESSION**

By: /s/ Timothy P. Palmer
Timothy P. Palmer (*Pro Hac Vice*)
Christopher P. Scheuller (*Pro Hac Vice*)
One Oxford Centre
301 Grant Street, 20th Floor
Pittsburgh, PA 15219
(412) 563-8800 (Telephone)
(412) 562-1041 (Facsimile)

**ATTORNEYS FOR BANK OF AMERICA, N.A.**

Seen and Agreed:
**MCCARTHY, LEBIT, CRYSTAL & LIFFMAN CO., LPA**

/s/ Robert Kracht
Robert Kracht
101 West Prospect Avenue, #1800
Cleveland, Ohio 44115
(216) 696-1422 (Telephone)
(216) 696-1210 (Facsimile)
rrk@mccarthylebit.com

**ATTORNEYS FOR VISCONSI BUTTERMILK LTD.**

Seen and Agreed:
**DRESSMAN BENZINGER LAVELLE PSC**

/s/ Elizabeth Weber
Elizabeth Weber
207 Thomas More Parkway
Crestview Hills, KY 41017
(859) 426-2153 (Telephone)
(859) 341-1469 (Facsmile)
bweber@dbllaw.com

**ATTORNEYS FOR REMKE MARKETS, INC.**

**Pursuant to Local Rule 9022-1(c), Timothy J. Hurley, Esq.  shall cause a copy of this Order to be served on each of the parties listed on the Master Service List and shall file with the Court a certificate of service of the Order upon such parties within fourteen (14) days hereof.**

12319084.2